NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAZIMIERZ LEJA & ZOFIA LEJA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SCHMIDT MANUFACTURING, INC., SYLVAN EQUIPMENT CORP., BOBCAT OF NEW YORK, INC., L,&L PAINTING CONTRACTING CO., INC., JOHN DOE I, et al.,<br><br>　　　　Defendants,<br><br>and<br><br>SCHMIDT MANUFACTURING, INC.,<br><br>　　　　Defendant/Third Party Plaintiff,<br><br>　　v.<br><br>SYPRIS TECHNOLOGIES, INC. f/k/a TUBE TURNS TECHNOLOGIES, INC., , SYPRIS SOLUTIONS, INC., RICHARD ROES 1-8 and JOHN DOES 1-8, et al.,<br><br>　　　　Third Party Defendants. | CIVIL ACTION NO. 01-5042 (DRD)<br><br>**OPINION** |

Appearances

Elizabeth F. Lorell, Esq.
HARWOOD LLOYD, LLC

1

130 Main Street
Hackensack, NJ 07601

*Attorney for Third Party Plaintiff Schmidt Manufacturing, Inc.*

John F. Ryan, Esq.
DONOVAN PARRY McDERMOTT & RADZIK
Wall Street Plaza
88 Pine Street
New York, NY 10005

Dennis D. Murrell, Esq.
G. Kennedy Hall, Jr., Esq.
MIDDLETON REUTLINGER
2500 Brown & Williamson Tower
Louisville, KY 40202

*Attorneys for Third Party Defendant Sypris Technologies, Inc.*

## OPINION

**DEBEVOISE, Senior District Judge**

Presently before the court is the motion of third party defendant Sypris Technologies, Inc. ("Sypris") to dismiss the Third Amended Third Party Complaint for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), which is opposed by defendant and third party plaintiff Schmidt Manufacturing, Inc. ("Schmidt") as well as defendants Sylvan Equipment Corp. ("Sylvan"), Bobcat of New York, Inc. ("Bobcat") and L&L Painting Contracting Co., Inc. ("L&L Painting").[1] For the reasons set forth below, the motion to dismiss will be granted. Because Sypris's motion to dismiss will be granted, Schmidt's motion for Rule 11 sanctions against Sypris for filing this motion to dismiss will be dismissed. Sypris's motion to dismiss for lack of personal jurisdiction was not frivolous, legally unreasonable or without factual foundation.

---

[1] Sylvan, Bobcat, and L&L Painting have indicated that they also oppose Sypris's motion and will rely on the opposition papers filed by Schmidt.

*FACTS*

Plaintiffs Kazimierz and Zofia Leja ("Plaintiffs") filed this product liability action alleging serious injuries to Kazimierz Leja ("Leja") arising from a workplace accident involving a sandblasting machine manufactured by Schmidt (the "Sandblaster").  Schmidt filed a notice of removal from the Superior Court of New Jersey, where it was originally filed.

Schmidt filed a Second Amended Third Party Complaint on June 29, 2004 against Sypris, seeking indemnification and contribution from Sypris.  Schmidt alleges that Sypris negligently designed and manufactured the t-bolt top closure (the "top closure") on the Sandblaster which caused Leja's injuries.  Schmidt was granted leave to file, and did file, a Third Amended Third Party Complaint naming Sypris, Sypris Solutions, and Tube Turns as third party defendants.[2]

Sypris, a subsidiary of Sypris Solutions, was incorporated in Delaware on May 9, 2001, with its headquarters and manufacturing facility in Kentucky.  Sypris is in the business of manufacturing component parts for pressurized vessels.  Sypris is the successor-in-interest to Tube Turns, which Schmidt has also identified as a third party defendant.  In or about 1983, Tube Turns had closed its New Jersey offices.  In 1983, Tube Turns's parent AllChem sold Tube Turns to Sumitomo, a Japanese corporation.  In 1988, Tube Turns, Inc. was purchased by the Sypris companies – its present Kentucky management.  In March 1991, Tube Turns, Inc. was renamed Tube Turns Technologies, Inc. and operated as a wholly-owned subsidiary of the Sypris companies.  In March 1998, Tube Turns Technologies, Inc. was merged into New Tube Turns Technologies, Inc., which was an entity incorporated by the Sypris companies in December 1996

---

[2]Schmidt has voluntarily dismissed its Third Party Complaint against Sypris Solutions, Inc. without prejudice.  Because Tube Turns was merged into Sypris and does not exist, the only third party defendant is Sypris.

3

in Kentucky. The merged entity was thereafter renamed Tube Turns Technologies, Inc., which continued to operate as a wholly owned subsidiary until 2002 when it was merged into Sypris and became a division of Sypris.

Sypris has sold at least 4,550 products to New Jersey companies from 1999 to April 2005 for over $2.4 million, and at least 6,668 products to New Jersey companies between 1995 and 2004 for over $3.7 million. Sypris has had over eighty New Jersey customers from 1995 to 2005.

Sypris began selling top closures to Schmidt in 1983. The top closures that were sold to Schmidt were specifically designed to fit Schmidt's specifications. Schmidt purchased approximately 100 top closures a year from Sypris from 1983 through 2003. Sypris never shipped the top closures to New Jersey. In 1995 or 1996[3], Sypris sold the particular top closure at issue to Schmidt from Louisville, Kentucky (FOB Louisville) and shipped to Schmidt in Texas. The following sequence of sales and returns ultimately led to the Sandblaster's resale to Leja's employer:

Sypris (KY) –> Schmidt (TX) –> Sylvan (NY) –> Bobcat (NY) and L&L Painting (NY)

Bobcat and L&L Painting returned the Sandblaster to Sylvan, which then resold the Sandblaster to West Virginia Paint, Leja's employer.

Since 1999, Sypris has not had any sales agents outside of Louisville, Kentucky and Houston, Texas. In 2002, Sypris sent one employee, Edgar von Minden, to New Jersey to perform service work at the request of a customer. Sypris sends updated product catalogs and

---

[3] Sypris's moving brief states, "The particular closure at issue was sold to Schmidt in 1996." (Moving Br. at 9.) Schmidt's opposition brief states, "[Sypris] . . . manufactured the top cover (or t-bolt top closure) on the Schmidt equipment, which [Sypris] sold to Schmidt in 1995." (Opp'n Br. at 3.)

Christmas cards to existing New Jersey customers. In 2002, Sypris sent notices of its name change to all customers. As evidence of Sypris's advertising and marketing in New Jersey, Schmidt offers the following exhibits:

- Sypris sent an introduction letter dated October 25, 2001 to a New Jersey customer explaining Tube Turns's business and suggesting a future business relationship. (Lorell Certification Ex. 11.)
- Sypris sent a brochure to a New Jersey customer on March 26, 2001. (Lorell Certification Ex. 14.)
- Sypris sent two sales brochures to a New Jersey customer, one in or about 1995 and the other in or about 1999. (Lorell Certification Ex. 15.)
- Sypris sent a catalog to a New Jersey customer in response to the customer's request. (Lorell Certification Ex. 16.)

In addition, Schmidt alleges that Sypris "has sent and received thousands of pages of facsimile and wire communications concerning its business with New Jersey customers; has over one thousand engineering documents in connection with its work with New Jersey customers, and has prepared hundreds of test reports certifying that its products sold in New Jersey conform with all applicable codes." (Opp'n Br. at 10.)

## DISCUSSION

Rule 4(e) of the Federal Rules of Civil Procedure authorizes the court to assert personal jurisdiction over a non-resident to the extent permissible under the law of the state where the court sits, in this case New Jersey. New Jersey's long-arm rule, N.J. Civ. P. R. 4:4-4, extends jurisdiction over a non-resident defendant "to the uttermost limits permitted by the United States Constitution." Charles Gendler Co. v. Telecom Equity Corp., 102 N.J. 460, 469 (N.J. 1986) (citation omitted). Constitutional due process permits the court to exercise personal jurisdiction over a non-resident defendant who has "minimum contacts" with the forum state, if maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International

Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction comes in two varieties, at least one of which the court must have over Sypris in order to hear the third party claims against it. One variety is known as specific personal jurisdiction, which would exist if the cause of action arises out of or is related to Sypris's contacts with New Jersey. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The court must determine whether Sypris has established sufficient minimum contacts with New Jersey. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Sypris's conduct and connection with New Jersey must be such that it could reasonably anticipate being haled into court here. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Additionally, Sypris must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Rudzewicz, 471 U.S. at 475. To summarize, specific jurisdiction exists if Sypris "purposely created contacts" with New Jersey, making it reasonable for him to anticipate being haled into court there. CSR Ltd. v. Fed. Ins. Co., 141 F. Supp. 2d 484, 490 (D.N.J. 2001).

Where the cause of action does not arise out of Sypris's forum activities, a court may exercise another variety of personal jurisdiction known as general personal jurisdiction if Sypris has engaged in "continuous and systematic" contacts with New Jersey. Helicopteros, 466 U.S. at 414-15. If "continuous and systematic" contacts exist, Sypris could reasonably anticipate being haled into court with respect to any cause of action. Therefore, general jurisdiction requires "a very high threshold of business activity." Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citation omitted). The facts required to establish general jurisdiction must be "extensive and persuasive." Reliance Steel Prods. v. Watson, Ess, Marshall,

675 F.2d 587, 589 (3d Cir. 1982).

Schmidt bears the burden of establishing, by a preponderance of the evidence, that Sypris's contacts with New Jersey are sufficient to give the court personal jurisdiction over Sypris. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992); Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). Moreover, Schmidt must sustain its burden of proof "though sworn affidavits or other competent evidence," and not through bare pleadings alone. Id. at 67 n.9. The court must accept Schmidt's allegations as true and construe disputed facts in favor of Schmidt. CSR Ltd., 141 F. Supp. 2d at 490 (citing Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

If Schmidt has made out a *prima facie* case, the burden shifts to Sypris, which "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 150 (3d Cir. 1992) (citing Rudzewicz, 471 U.S. at 477). Sypris's contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Rudzewicz, 471 U.S. at 476-77 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)). Relevant factors include: (1) the burden imposed on Sypris; (2) New Jersey's interest in adjudicating the dispute; (3) Schmidt's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. Woodson, 444 U.S. at 292. These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. Rudzewicz, 471 U.S. at 477. On the other hand, the concept of

"fair play and substantial justice" may defeat the reasonableness of jurisdiction even if Sypris has purposefully directed its activities at New Jersey. Id. at 477-78.

Before determining whether Sypris has made sufficient contacts with New Jersey to subject it to personal jurisdiction, the relevant time period in which to examine Sypris's contacts must be established. With respect to general jurisdiction, the court must examine Sypris's contacts over a "reasonable period" of time. Wallkill 5 Associates II v. Tectonic Eng'g, P.C., Civ. A. 95-5984, 1997 WL 452252, at *3 (D.N.J. July 25, 1997) (citing Modern Mailers, Inc. v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1052-53 (E.D. Pa. 1994)). The court's examination of forum contacts is not limited to those that coincided with the activities that gave rise to the lawsuit because general jurisdiction is based upon the relationship that the defendant has with the forum state independent of the lawsuit. Modern Mailers, 844 F. Supp. at 1052. In Modern Mailers, the court decided that the period from 1990 to 1993 was a reasonable period of time, in part because plaintiff's response to defendant's motion was based on that period and these were the years to which the president of defendant company referred in his deposition testimony. Id. at 1053. Similarly in this case, determination of whether there is general jurisdiction will be based on the period from 1995 to 2004 because much of the factual data used in the parties' arguments cover this time period, Sypris's designated Rule 30(b)(6) deponent Brett Keener testified that he did not know about Sypris's sales prior to May 1999, and Sypris does not maintain its computer database prior to 1999 (Reply Br. at 6). Ten years is a reasonable period of time in which to determine whether "continuous and systematic" contacts exist to confer general jurisdiction. Evidence of Tube Turns's or Sypris's contacts prior to 1995 will not be considered because they extend beyond a reasonable period of time. The strategies and fortunes of businesses evolve over

8

time, and to attribute the decades-old contacts of Tube Turns to Sypris would not present an accurate assessment of the sufficiency of Sypris's contacts with New Jersey for personal jurisdiction purposes.

With respect to specific jurisdiction, which is related to the activities that gave rise to the lawsuit, the relevant time period would cover Sypris's sale of the top closure, *i.e.*, 1995-1996.

**I. Specific jurisdiction**

To determine whether the court has specific jurisdiction over Sypris, the relevant time frame is 1995-1996, when the top closure manufactured by Sypris was sold to and incorporated by Schmidt into the Sandblaster. Specific jurisdiction exists "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros, 466 U.S. at 414 & n.8. The inquiry is "fact-sensitive in that it turns on the 'quality and nature of a defendant's activity in relation to the forum state.'" Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197, 203 (3d Cir. 1998). The focus should be on defendant's purposeful activity directed toward the forum state, not on the unilateral activity of plaintiff or some unrelated third party. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). A mere "fortuitous" contact or a contact which is "the result of a single transaction" does not satisfy the minimum-contacts requirement. Pennzoil, 149 F.3d at 203 (citation omitted). Furthermore, "the mere foreseeability that a product one sells may end up in the forum state does not render the seller amenable to suit in the forum state." Id. (citations and internal quotation marks omitted).

In this case, Plaintiffs' cause of action does not arise out of, and is not related to, Sypris's contacts with New Jersey. Sypris did not purposefully sell or direct the top closure which allegedly caused Leja's injuries to New Jersey. In fact, the Sandblaster to which the top closure

9

was attached arrived in New Jersey only after multiple transactions and travels to interim locations outside of New Jersey. Sypris sold the top closure to Schmidt and shipped the top closure to Texas, where Schmidt incorporated the top closure into its Sandblaster. The subsequent travels and eventual resting place of the Sandblaster in New Jersey was not the result of Sypris's purposeful conduct. Rather, the eventual sale of the Sandblaster to Leja's employer in New Jersey was a "random, fortuitous, or attenuated contact" that is insufficient to exercise specific personal jurisdiction. See Rudzewicz, 471 U.S. at 475. After Sypris sold and shipped the top closure to Schmidt in Texas, all subsequent events – *i.e.*, Schmidt's subsequent sale of the Sandblaster to Sylvan, which then sold it to Bobcat and L&L Painting, which then returned it to Sylvan, which then sold it to Leja's employer – cannot be attributed to the purposeful conduct of Sypris.

      Schmidt argues that, contrary to Sypris's assertion that it did not specifically target New Jersey and had no knowledge that the top closure would end up in New Jersey, Sypris knowingly and intentionally sold thousands of products directly to New Jersey, including the same type of top closure at issue in this lawsuit. (Opp'n Br. at 23 n.18) (referring to Lorell Certification at ¶ 24.) The supporting evidence for Schmidt's assertion is stated as follows:

> The sales data provided by [Sypris] (for a limited period) suggests that from May 6, 1999 to April 5, 2005, [Sypris] sold at least 220 closures (totaling approximately $300,000.00) to New Jersey companies, including 36 of the same type of closure . . . which is at issue in this case.

(Lorell Certification at ¶ 24.) This evidence, however, is irrelevant for specific jurisdictional purposes because the time period covered does not coincide with the time period of 1995-1996, when Sypris sold the top closure at issue in this case. The claims in this case do not arise out of

or relate to these sales made at a later time.

Schmidt argues that the stream of commerce theory applies to subject Sypris to personal jurisdiction in New Jersey. Under the stream of commerce theory, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (U.S. 1980). After Woodson was decided, the Supreme Court subsequently attempted to clarify, but arguably muddied, the stream of commerce theory in Asahi Metal Ind. Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987), in which the Court split 4-4-1 and "presented three different conceptions of purposeful availment through the stream of commerce, none of which was endorsed by a majority of the Court." Pennzoil, 149 F.3d at 204. In a plurality opinion, Justice O'Connor concluded that placement of a product in the stream of commerce must be accompanied by some additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum State. Asahi Metal, 480 U.S. at 112. According to this plurality opinion, examples of such conduct showing purposeful availment include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. The record is devoid of such evidence of "purposeful availment" during the relevant time period.

The plurality opinion in Asahi Metals authored by Justice Brennan defined the stream of commerce theory more broadly: "As long as a participant in this process is aware that the final

11

product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Id. at 117. "The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its stream of commerce *with the expectation that they will be purchased by consumers* in the forum State." Id. at 119-20 (emphasis in original) (citation omitted). Under this interpretation of the stream of commerce theory, no additional conduct need be shown and therefore personal jurisdiction would be found more frequently than under the interpretation advanced by Justice O'Connor. Construing the stream of commerce theory in this more generous manner does not weigh in favor of finding specific jurisdiction in this case. Essentially, Schmidt argues that because it was foreseeable that the Sandblaster "would come to rest and be used in New Jersey as well as in any other state" (Opp'n Br. at 12), Sypris had "'fair warning' and knew full well that its closure in Schmidt's equipment would end up in New Jersey." (Id. at 13.) Schmidt's argument fails because "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Lebel v. Everglades Marina, Inc., 115 N.J. 317, 324 (N.J. 1989) ("the mere foreseeability of an event in another state is not a sufficient benchmark for exercising personal jurisdiction") (citation and internal quotation marks omitted). Furthermore, the main focus is not on the relationship of the parties but the relationship between Sypris and New Jersey. Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990). Therefore, the mere conduct of business between Sypris and Schmidt, which Sypris allegedly knew was a national distributor, is not evidence of purposeful

availment. Even if Sypris had an expectation that the Sandblaster which entered the stream of commerce in 1995 or 1996 would be purchased by a New Jersey consumer, "the mere foreseeability that a product one sells may end up in the forum state does not render the seller amenable to suit in the forum state." Pennzoil, 149 F.3d at 203 (citation omitted). Once Sypris consummated a sale to Schmidt, subsequent transfers of Schmidt's products which incorporated Sypris's component parts would generally be of little interest to Sypris. See Helicopteros, 466 U.S. at 416-17 ("Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer."). Moreover, Sypris did not ship to New Jersey any top closures that it sold to Schmidt, which attenuates the foreseeability factor.

Because Schmidt has not shown that any claims in this lawsuit arise out of or relate to Sypris's contacts with New Jersey, the court cannot exercise specific jurisdiction over Sypris. Helicopteros, 466 U.S. at 414.

**II.  General jurisdiction**

Because the court cannot exercise specific personal jurisdiction over Sypris, the court must determine whether general personal jurisdiction exists. The issue is whether Sypris has engaged in "continuous and systematic" contacts with New Jersey such that the court has general personal jurisdiction over Sypris. Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Schmidt "must show significantly more than mere minimum contacts to establish general jurisdiction." Id. Such an inquiry turns on the facts. Broadly speaking, two categories of contacts made by Sypris – sales activity and solicitation activity – will be analyzed to determine whether general jurisdiction can be exercised.

### (A)  Sales activity

Schmidt alleges that Sypris has sold at least 6,668 products worth over $3.7 million in sales to over 80 New Jersey companies between 1995 and 2004; that Sypris has sold over 1,000 top closures to Schmidt over the last twenty years, knowing that Schmidt was a national distributor of products; and that Sypris derives substantial income from regular and continuous business contacts with New Jersey customers.  Sypris, on the other hand, argues that less than one percent of Sypris's products are ordered by New Jersey customers and less than one percent of Sypris's total revenue is generated by sales to New Jersey customers.

The Court of Appeals has noted that the percentage and absolute amount of sales is generally irrelevant.  Provident, 819 F.2d at 438.  Rather, the focus should be on whether the nature of defendant's contacts with the forum state was central to the conduct of its business.  Id.  In Provident, the Court of Appeals based its finding of general jurisdiction on the fact that the defendant bank conducted business regarding its zero-balance account with a bank in the forum state every business day.  Id. (finding "[t]his daily contact was a continuous and central part" of defendant's business).  This daily contact was enough to find general jurisdiction, even though the amount of "bread and butter" activities, i.e., the borrowing and lending of money, in the forum state was small – 0.066% of its depositors were in the forum state (700 – 1,000 depositors), which accounted for 0.071% (or $10 million in deposits) of the defendant's total deposits, and 0.083% (or $10 million in outstanding loans) of the defendant's outstanding loans were made to forum state residents.  Id.

The situation in this case is different from the situation in Provident.  Like the defendant bank's business in Provident, the percentage of Sypris's business in New Jersey is not

14

substantial, and the activity in New Jersey is the "bread and butter" of Sypris's business in the broad sense that Sypris is in the business of selling component parts. The Court of Appeals in Provident, however, did not find that "bread and butter" activities created general jurisdiction. Rather, the Court of Appeals found that the defendant bank's daily activity in its zero-balance bank account was the decisive contact for establishing general jurisdiction. Id. In contrast, Sypris has no analogous daily or regular contact with New Jersey that is central to the functioning of its business. Just as the number of forum state loans in Provident would not have been sufficient to form a basis for general jurisdiction, so too Sypris's New Jersey sales are insufficient to support a finding of continuous and systematic business. See Modern Mailers v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1054 (E.D. Pa. 1994).

      *(B)  Solicitation activity*

Schmidt alleges that Sypris solicited business in New Jersey by sending the following items to New Jersey: brochures, catalogs, an informational letter to a potential New Jersey customer, a notice of name change, and Christmas cards. Additionally, Schmidt alleges that Sypris sells to six distributors in New Jersey which are Sypris's *de facto* sales representatives, and that since 1999 two Sypris employees have traveled to New Jersey, one of which was a sales representative sent to New Jersey in 2002 in response to a service request from New Jersey customer. Finally, Schmidt alleges that Sypris "has sent and received thousands of pages of facsimile and wire communications concerning its business with New Jersey customers; has over one thousand engineering documents in connection with its work with New Jersey customers, and has prepared hundreds of test reports certifying that its products sold in New Jersey conform with all applicable codes." (Opp'n Br. at 10.)

Sypris apparently has solicited business in New Jersey.  The issue is whether such activity establishes sufficiently "continuous and systematic" contacts.  Often, courts apply a "solicitation plus" test in which they will exercise general jurisdiction only if solicitation of business is "substantial and continuous, and defendants engage in other activities of substance in the state."  Wortham v. KarstadtQuelle AG (In re Nazi Era Cases Against German Defendants Litig.), 320 F. Supp. 2d 204, 216 (D.N.J. 2004) (discussing general jurisdiction under New York law).  As discussed in the previous section regarding Sypris's sales activity, the nature of Sypris's activity in New Jersey is not central to Sypris's business.  Furthermore, Sypris's solicitation activity in New Jersey, which does not rise to the level of substantial and continuous activity, does not meet the "solicitation plus" test.  The record does not show how often Sypris sent brochures or catalogs to New Jersey companies.  Rather, the evidence shows that Sypris sent brochures to a New Jersey customer in response to the customer's request, and that one New Jersey customer received two sales brochures, one of which was received in or about 1995 and the other in or about 1999; these activities hardly constitute substantial or continuous activity.  As for sending a notice of name change, it would be reasonable to assume that sending such notices would rarely occur because companies do not change their names continuously.  Sending Christmas cards, which would occur once a year, would not be continuous or substantial activity.  All of these activities are better characterized as sporadic, intermittent contacts rather than substantial and continuous.

Six distributors in New Jersey and two visits by Sypris employees since 1999 also do not constitute substantial and continuous solicitation activity.  By 1983 or 1984, Tube Turns did not have any offices in New Jersey.  (DiFolco Dep. at 20-23.)  Since 1988, Sypris has not had a sales

agent in New Jersey. (Keener Aff. ¶ 10.) Although Sypris did not employ sales agents in New Jersey, Schmidt argues that Sypris sold its products to six distributors in New Jersey who acted as *de facto* sales representatives. In Eason v. Linden Avionics, Inc., 706 F. Supp. 311 (D.N.J. 1989), the court noted that a non-resident defendant "cannot avoid being subject to the jurisdiction of a state simply by arranging for the indirect distribution of its goods rather than entering a local market independently." Id. at 324. The court in Eason found that the defendant was subject to personal jurisdiction because it exerted almost total control over its distributor, such as setting market sales objectives, prescribing an inventory of parts and equipment, mandating that only defendant's parts and equipment may be sold for defendant's airplanes, setting standards for the size and maintenance of the distributor's facilities, and setting minimum order requirements and working stock levels. Id. at 322. In this case, there is no evidence that Sypris exerted such control over any of the distributors in New Jersey, which Sypris contends are independent distributors. Furthermore, "no court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action." Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1242 (9th Cir. 1984). Here, Sypris did not maintain a substantial sales force in New Jersey. The two Sypris employees who have visited New Jersey since 1999 do not constitute a sales force, and six independent distributors which are not controlled by Sypris can hardly be characterized as Sypris's sales force.

  With respect to facsimile and e-mail communications, although they may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction. Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 521, 523 (8th Cir. 1996)

(finding no personal jurisdiction despite evidence of "dozens of letters and faxes and numerous phone calls" between defendant and forum state). See also Noonan v. Winston Co., 135 F.3d 85, 92-93 (1st Cir. 1998) (finding no personal jurisdiction despite non-resident company's regular and frequent telephone calls, faxes and letters to resident company). Accordingly, evidence of facsimile and e-mail communications may weigh in favor of exercising jurisdiction, but they will not establish general jurisdiction if other evidence does not sufficiently weigh in favor. With respect to the engineering documents and test reports, Schmidt has not shown how these documents add to the jurisdictional analysis; these documents could simply be part of the package of goods sold rather than evidence of additional activity purposefully directed at New Jersey. Nevertheless, the engineering documents and test reports will be considered as evidence weighing in favor, but not dispositive, of general jurisdiction.

      Taken together, Sypris's solicitation activity and sales activity do not establish contacts which are so "continuous and systematic" that Sypris should expect to be haled into New Jersey on any cause of action. Sypris is a Kentucky-based manufacturer of component parts that does not have an office, plant or distribution center in New Jersey, does not own property in New Jersey, does not maintain inventory in New Jersey, does not have employees in New Jersey, does not employ a sales representative or sales agent in New Jersey and has not employed such since 1999, has not applied for a license to do business in New Jersey, and does not maintain any bank accounts or post office addresses in New Jersey. Sypris's sales to New Jersey customers, limited solicitation of and communications with New Jersey companies do not rise to the level of "continuous and systematic" or "continuous and substantial" contacts.

      Because Sypris has not established sufficient contacts with New Jersey to subject it to

either general or specific personal jurisdiction, considerations of fair play and substantial justice need not be analyzed.

## CONCLUSION

Sypris's motion to dismiss for lack of personal jurisdiction will be granted. Schmidt's motion for Rule 11 sanctions will be dismissed. An appropriate order will be issued.

/s/ Dickinson R. Debevoise
Dickinson R. Debevoise, U.S.S.D.J.

June 3, 2005