**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAZIMIERZ AND ZOFIA LEJA, <br><br>                      Plaintiffs, <br><br>v. <br><br>SCHMIDT MFG., INC., SYLVAN EQUIP. CORP., BOBCAT OF NEW YORK, INC., and L&L PAINTING CONTRACTING CO., INC., et al., <br><br>                      Defendants. | Civ. No. 01-5042 (DRD) <br><br>**O P I N I O N** |

*Appearances by:*

MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
Wendy H. Smith, Esq.
425 Eagle Rock Avenue, Suite 302
Roseland, NJ 07068

    *Attorneys for Defendant Sylvan Equip. Corp.,*

LOWENSTEIN SANDLER
David W. Field, Esq.
65 Livingston Avenue
Roseland, NJ 07068

SCHWARTZ, SIMON, EDELSTEIN, CELSO & KESSLER, LLC
Elizabeth F. Lorell, Esq.
Ten James Street
Florham Park, NJ 07932

*Attorneys for Defendant Schmidt Mfg., Inc.*

CHASAN LEYNER & LAMPARELLO
Anthony V. D'Elia, Esq.
300 Harmon Meadow Boulevard,
Secaucus, NJ 07094-3621

*Attorneys for Plaintiffs*

**DEBEVOISE, Senior District Judge**

On August 31, 2004, plaintiffs, Kazimierz and Zofia Leja ("Plaintiffs"), commenced this action in New Jersey state court alleging several causes of action related to injuries sustained in an accident involving a sandblasting machine. The action was removed to this court, and all but one of Plaintiffs' causes of action have been disposed of. Remaining are several causes of action based upon strict liability against the defendants, Schmidt Manufacturing, Inc. ("Schmidt") and Sylvan Equipment Corp. ("Sylvan," collectively, "Defendants"), along with causes of action for contribution and indemnification by Schmidt against Sylvan. Sylvan brings these motions for summary judgment against Plaintiffs and Schmidt, seeking an order dismissing all claims against it. Plaintiffs bring a cross-motion for summary judgment against Sylvan. For the reasons set forth below, all of the motions will be denied.

## I. BACKGROUND

On May 4, 2000, plaintiff, Kazimierz Leja ("Leja") lost his right arm when it was struck by the top closure of the sandblasting machine he was operating. Apparently, he opened the closure without first executing the "blow down procedure"–the process by which air pressure is released from the machine after use prior to opening the closure--and the apparatus severely injured him.

The machine was built-to-order for one of Sylvan's leasing customers, L&L Painting Co. ("L&L"), in 1996, for use by L&L in the removal of paint off the Outerbridge Crossing bridge. When the machine proved inadequate for the job, Sylvan took the machine back from L&L and sold it to West Virginia Paint ("WVP"), Leja's employer.

At the time of the accident, the machine, which was manufactured by Schmidt and distributed by Sylvan, was missing several warning labels which Schmidt contends had been on the machine when it was originally delivered to Sylvan. According to Schmidt, when the it sent the machine to Sylvan, it contained three sets of warnings: two sets of adhesive warnings, and one metal warning. The first set consisted of three orange and blue labels, which had been attached near the machine's ladder, bearing the text: "WARNING DEPRESSURIZE UNIT BEFORE PERFORMING ANY MAINTENANCE." The second set consisted of two red and white labels which had been attached on top of the machine, near the lid, with the following text: "WARNING DEPRESSURIZE UNIT BEFORE OPENING LID." Finally, the machine included a metal warning, which provided:

> WARNING
> 1. To prevent injury or death, read warnings and safe procedures in owner's manual
> 2. Depressurize unit before any maintenance or loading.

When the accident occurred, only the metal warning was still attached to the machine.

Schmidt submits evidence that Sylvan, before selling the machine to WVP, removed the warning labels so that the machine could be painted to enhance its resale value, and that Sylvan did not replace the warning labels. Schmidt argues that without the warning labels, the machine was unreasonably dangerous. Schmidt also contends that, despite Leja's preexisting awareness

3

of the importance of the blow down procedure, the absence of the warning labels was a proximate cause of Leja's injuries.

Plaintiffs argue that the machine was defective because, among other things, it did not contain a guage which might have alerted Leja that the tank was pressurized. In pursuit of this theory, Plaintiffs appear to have abandoned their prosecution of the claim against Sylvan--that the absence of the adhesive warning labels caused the accident. Schmidt contends that the absence of the warning labels was at least a factor in causing the accident, and the evidence before the court seems to support that theory.

Sylvan argues that it is entitled to summary judgment, first, because Plaintiffs conceded the issue of proximate cause. Section 4-A of the Pre-Trial Order, titled "Plaintiff's Contested Facts," provides that:

> A. Plaintiff intends to prove the following contested facts with regard to liability:
> ***
> 10. The lack of any glued on warning labels (as alleged by the Defendant Schmidt) was *not* a proximate cause of the accident.

(Emphasis supplied).

Regarding the evidence, Sylvan argues that the expert deposition testimony overwhelming suggests that the missing warning labels did not proximately cause the accident. At least two of the experts made statements indicating their doubt as to whether the lack of warning labels was a cause of the accident.

Plaintiffs' "human factors" expert, Patrick McGuire, testified in his deposition that the warning labels "wouldn't make a big difference" in this case because "it wouldn't tell him whether that particular tank was pressurized." This is consistent with Plaintiffs' decision to

4

focus on Schmidt's liability, and Plaintiffs' other theories of liability regarding the allegedly defective machine, rather than Sylvan's potential liability vis-a-vis the missing warning labels.

Sylvan argues that, according to the evidence, Leja had countless times operated machines like the one involved in the accident. Leja opened the closure without executing the blow down procedure because he did not know that the machine had not yet been depressurized, or because he forgot about the blow down procedure. Thus, Sylvan contends that the warnings would not have provided him with any information he did not already have. Indeed, Leja had worked for WVP for more than a decade, and had been trained in the use of the machines like the one involved in this accident. Leja had long been operating sandblasters, and he was aware of the dangers associated with the machine and the importance of the blow down procedure. Thus, Sylvan argues, the evidence shows that the warning labels would not have prevented the accident..

Schmidt and Plaintiffs contend that even if the warning labels would not have been instructive, they may have provided a reminder which would have prevented the accident. McGuire testified that the "major purpose of the warning labels [is] to remind users of product-related safety information," and another of Plaintiffs' expert, William Meyer, reported (in an unsworn statement) that "the absence of such stickers could be considered a contributing factor to the subject accident . . ." Leja himself is without memory of the events of the day, and, thus, is unable to provide an answer to the question of whether the warning labels would have prevented the accident.

## II. DISCUSSION

Sylvan advances two arguments in support of its motions. First, Sylvan contends that

5

there is no evidence that the missing warning labels was a proximate cause of Leja's injuries, and that Plaintiffs have admitted that the presence of the warning labels would not have prevented the accident. Second, Sylvan contends that it is not a "product seller" for purposes of the New Jersey Products Liability Act (the "Act"), N.J.S.A. 2:58C-1 to C-11. Plaintiffs argue only that Sylvan is a "product seller" as defined in the Act, and do not address Sylvan's arguments regarding the lack of evidence of causation.

A.  **Standard of Review**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

B.  **Evidence of Causation**

Sylvan argues that Plaintiffs' concession, that the warning labels would not have prevented Leja's injuries, eliminates any issue of fact regarding causation. Sylvan also argues that most of the evidence submitted suggests that the warning label issue is insignificant in this

6

case, and not a proximate cause. By contrast, Schmidt argues that there is a triable issue of fact as to whether the absence of the warning labels was a cause of the accident, and that Sylvan's motion for summary judgment must be denied.

Plaintiffs concede in pre-trial papers that the absence of the warning label was not a proximate cause of the accident; however, there is evidence to the contrary. The apparently strategic decision of Plaintiffs' counsel to forgo prosecuting the claim against Sylvan in favor of more effectively arguing the case against Schmidt, is not trivial; however, the statement in the Pre-Trial Order does not constitute evidence and is not legally determinative of the outcome of the motions for summary judgment before the court. Instead, the court must decide the motions on the basis of all of the evidence and arguments before it, including the evidence and arguments submitted by Schmidt, and not merely the facts--favorable or otherwise--presented or stipulated-to by Plaintiffs.

The New Jersey Supreme Court explained, in Campos v. Firestone Tire & Rubber Co., that the defect in a strict liability action may consist of a manufacturing flaw, a design defect, or an inadequate warning. 98 N.J. 198, 204 (1984). The duty to warn in the strict liability cause of action is based on the notion that absent a warning or adequate warning, a product is defective, in that it is not reasonably fit, suitable, or safe for its intended purposes. Id. at 205-6 (citing Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242 [1981]). In testing the need and adequacy of a warning, the manufacturer is deemed to know the dangerousness of the product, and it is with that knowledge assumed that the manufacturer's conduct is to be gauged. Id. In this case there is no dispute that the manufacturer had actual knowledge of the risk.

A manufacturer has a duty to warn such foreseeable users of all hidden or latent dangers

that would arise out of a reasonably anticipated use of its product. Id. The duty to warn embodies "the notion that the warning be sufficient to adequately protect any and all foreseeable users from hidden dangers presented by the product." Id. at 206. However, there are exceptions to the duty to warn, including for dangers which are objectively obvious. Id. at 207-8.

Even if there is a duty to warn, a defendant can assert a causation defense based upon the plaintiff's subjective awareness of the particular danger in question. Id. at 207-9. In the case of dangers about which the plaintiff is subjectively aware, "[a] duty to warn is not automatically extinguished." Id. at 209. Instead, preexisting knowledge might negate a claim that the absence of a warning was a cause in fact of plaintiff's injury, but it is only one factor, and the question is usually one left for the fact finder. Id.

If the user of a product knows at the moment of use the very danger of which a warning would have apprised him, but chooses to disregard that conscious knowledge, then the presence or absence of the warning is irrelevant. Vallillo v. Muskin Corp., 212 N.J.Super. 155, 159-60 (N.J.Super.A.D.,1986). There is "no need to warn one of a danger he already knows." McGrath v. American Cyanamid Co., 41 N.J. 272, 275 (1963). Conversely, if as in Campos, the danger has been even momentarily forgotten by the user and there is some reasonable possibility that the warning would have triggered his recollection of the danger and thus changed his conduct, then the absence of the warning is a proper ingredient in a proximate cause analysis. Vallillo, 212 N.J.Super., at 160.

Here, very little evidence has been submitted, and Sylvan does not provide any evidence that Leja assumed the risk by opening the closure. Leja did not know "at the moment of use" that opening the closure was dangerous, and there is no evidence that he disregarded any risk.

8

As in Campos, the experts in this case were asked whether the warning labels would have prevented the accident, and they responded mostly in the negative. But while the experts' opinions cast doubt on the causation issue, they are not conclusive. Indeed, even to the extent that McGuire's testimony indicates that the labels were not a "cause" of the accident, McGuire's practical opinion regarding the concept of "cause" is not synonymous with the "cause" for which the court looks in a tort claim. Considering the evidence, a jury could reasonably infer that the absence of the warning labels was a proximate cause of Leja's injuries.

**C. Liability Under the Act**

Sylvan argues that it was not a "product seller" or "manufacturer" under the Act because it falls under the "occasional or casual seller" exception. In particular, Sylvan contends that it was in the business of equipment rental--not sales--and that it did not usually sell blasters as large as the machine in question here. According to Schmidt, Sylvan was in the business of selling and leasing industrial equipment like the blaster machine involved in this case. As such, Schmidt argues that Sylvan was a "product seller" for purposes of strict liability for the safety of this machine.

The Act, which is a part of the "remedial legislation" enacted "to establish clear rules with respect to certain matters relating to products liability actions," see N.J.S.A. 2A:58C-1, defines the terms "product seller" as:

> any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce.

Id.

9

In <u>Agurto v. Guhr</u>, 381 N.J.Super 519, 526-27 (App. Div. 2005), the court explained that "the term 'occasional' does not mean 'once in a while.' Rather, it "means that the selling of the goods at issue is not part of the 'purpose' of the seller's business under N.J.S.A. 2A:58C-8." <u>Id.</u> In <u>Santiago v. E.W. Bliss Div.</u>, 201 N.J.Super. 205, 216 (1985), the court declined to apply strict liability to a company that sold one of its punch presses after using the machine in its telephone equipment business for twenty-three years. The court held that "the rule of strict liability does not apply to an occasional seller who is not engaged in that activity as a part of its business." <u>Id.</u>

The defendant in <u>Santiago</u> did not manufacture or sell punch presses as part of its business; it only used the punch press to make telephone equipment. Hence, although it happened to sell off one of its used punch presses, it was not a "seller" of punch presses for purposes of strict liability. The court further noted that "the doctrine [of strict products liability] has developed primarily in actions against manufacturers and sellers who place products in the stream of commerce." <u>Santiago</u>, 201 N.J.Super., at 216. Unlike the telephone equipment company in Santiago, which clearly was not in the business of selling punch presses, in this case, Sylvan is very much in the business of causing sandblasters to "enter the stream of commerce," whether by lease or sale.

Relying on <u>Agurto</u>, Sylvan argues that the category "industrial equipment sales" is too broad a description of the purpose of Sylvan's business. Instead, Sylvan suggests that there is a significant distinction between small blasters--which Sylvan ordinarily sold and rented--and large blasters--such as the machine causing the injury in this case--which Sylvan did not ordinarily rent or sell. As Sylvan would have it, the purpose of its business was to place small blasters into the stream of commerce, but not large ones. Therefore, Sylvan concludes the court should find, as a

10

matter of law, that Sylvan was not a "product seller."

The court finds this argument unpersuasive, particularly in light of the fact that New Jersey courts have rather narrowly applied the exception. See, e.g., Stefano v. Borough of Spring Lake, 2007 WL 1498884 (N.J.Super.A.D. 2007) (Held that in the sale of defective cooking equipment by a concession stand operator, the seller was not a "product seller" for purposes of the Act since the sale was a "one-time" transaction involving the subsequent concession stand operator).

Thus, it cannot be said that, as a matter of law, Sylvan was not a "product seller."

### D. Contribution and Indemnification

In light of the determinations made in this opinion, supra, Sylvan's arguments regarding contribution and indemnification are irrelevant. To be sure, New Jersey law provides tortfeasors the right to bring an action against other tortfeasors bearing partial responsibility. Burt v. West Jersey Health Systems, 339 N.J. Super. 296, 306 (App. Div. 2001). Here, as Plaintiffs' claims against Sylvan and Schmidt have survived the motion for summary judgment, so too must Schmidt's cross-claims against Sylvan.

It follows that if Sylvan is primarily liable for Plaintiffs' injuries, then Schmidt will be entitled to indemnification. See Ramos v. Browning Ferris Industries of South Jersey, Inc., 103 N.J. 177, 191-92 (1986). Since no determinations have yet been made as to liability, the issue of Schmidt's right to indemnity is not yet ripe.

### E. Plaintiffs' Cross-Motion

There remain numerous material issues of fact which must be decided by a jury, including the issues discussed in this opinion, supra. Thus, Plaintiffs' motion for summary judgment will

be denied.

### III.  CONCLUSION

For the reasons set forth above, all of the motions for summary judgment will be denied.

          /s/ Dickinson R. Debevoise
          DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:      March 31, 2008