NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ZOFIA LEJA, individually, and as general Administratix and Administratix *ad prosequendum* of the Estate of Kazimierz Leja, | : : : : : | Civ. No. 01-5042(DRD) **O P I N I O N** |
| Plaintiffs, | : : | |
| v. | : : | |
| SCHMIDT MANUFACTURING, INC. and SYLVAN EQUIPMENT CORP., | : : : | |
| Defendants. | : : | |

CHASAN LEYNER & LAMPARELLO, PC
300 Harmon Meadow Boulevard
Secaucus, New Jersey 07094
    Attorneys for Plaintiff, Zofia Leja, individually
    and as general administratix and administratix
    *ad prosequendum* of the Estate of Kazimierz Leja
By: Anthony V. D'Elia, Esq.

LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068-1791

    and

GORDON & REES, LLP
Columbia Corporate Center
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932
    Attorneys for Defendant, Schmidt Manufacturing, Inc.

**Debevoise, Senior United States District Judge**

    This is a products liability action arising out of an industrial accident that occurred on

May 4, 2000. It has had long pretrial history and, except for a pending motion for reconsideration, it is substantially ready for trial. On May 18, 2010, Plaintiff, Zofia Leja, individually, and as general administratix and administratix *ad prosequendum* of the Estate of Kazimierz Leja, moved for an order of recusal pursuant to 28 U.S.C. § 455 (a). For the reasons set forth below the motion will be denied.

The complaint was filed in 2001, and Elizabeth Lorell, Esq. represented the Plaintiff. In 2005 I denied Schmidt's motion to join another party for contribution, and on January 19, 2007 the Honorable John Keefe, Sr. (ret.) directed Schmidt to pay his fee as follows: $1,416.66 of a $4,250.00 invoice and $641.26 of a $1,923.78 invoice. At about the same time Schmidt added the law firm of Lowenstein Sandler PC as co-counsel with Ms. Lorell.

The grounds for Plaintiff's recusal motion are i) my service as an officer and trustee of the New Jersey Institute for Social Justice, a non-profit organization that Alan V. Lowenstein, Esq., and his wife Amy had founded in 1999 with a generous grant, and ii) my relationship with Douglas S. Eakeley, Esq., a senior partner with the Lowenstein firm.

Pursuant to 28 U.S.C. § 455(a), "Any justice, judge or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." To determine whether recusal pursuant to § 455(a) is warranted, the relevant inquiry is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." In Re Kensington Inter'l Ltd. 368 F. 3d 289, 301 (3d Cir. 2004). The hypothetical reasonable person under § 455(a) must be:

> someone outside the judicial system because judicial insiders, accustomed to the process of dispassionate decision making and keenly aware of their constitutional and ethical obligations to decide

>> matters solely on the merits, may regard asserted conflicts to be more
>> innocuous than an outsider would.

Id. at 303.

The standard is that of an average person on the street who knows all relevant facts of the case.  See U.S. v. Ruff, 472 F. 3d 1044, 1046 (8th Cir. 2007).

The deficiency in Plaintiff's motion is that it relies upon a few isolated facts and is not presented from an average person on the street who knows all relevant facts.

I have known Mr. Eakeley for many years, long before I became a judge in 1979.  He was an associate with the New York law firm of Debevoise, Plimpton, Lyons & Gates (now Debevoise & Plimpton).  I have never had any association with that firm and, in fact, from time to time hear cases in which it is a party.  My relations with Mr. Eakeley were purely social.  For a time after I became a judge he was a partner in my former firm, but we were never at that firm at the same time.  Mr. Eakeley left that firm to become a partner in the Lowenstein firm, with which he has remained until this day.

Both Mr. Eakeley and I were involved in a variety of programs designed to provide legal services for the poor.  For a time he was Chairperson of the Board of Directors of the National Legal Services Corporation.  In 1984 Legal Services of New Jersey in conjunction with the New Jersey State Bar association created a Debevoise-Eakeley Award to recognize each year an attorney who had advanced legal services for the poor.  I fail to see how the average person on the street could construe this 1984 event as affecting my judgment as to Mr. Eakeley or the Lowenstein firm.

The other ground for Plaintiff's motion is my association with the New Jersey Institute for Social Justice and Lowenstein Sandler.  To begin with I have never had any association with

Lowenstein Sandler PC, except when prior to 1979 in private practice I litigated cases with or against it and when after 1979 as a judge I heard cases in which it was a party.

Alan V. Lowenstein, Esq. was a senior partner in the law firm of Riker, Emery and Danzig when in 1953 I became an associate with that firm. He left to start his own firm shortly after that. We later collaborated in several public interest ventures. When I helped found the Newark Legal Services Project in 1965, he helped us raise money to provide the "local share" that supplemented federal funding of the Project. We remained good friends through the years.

In 1999 Mr. Lowenstein and his wife Amy gave a very substantial sum of money to start the New Jersey Institute for Social Justice. He asked me and a number of other persons to be Directors and ultimately asked me to be the Institute's Vice President. Because of advancing years I resigned my positions there a year or so ago.

Mr. Eakeley was Treasurer. In addition to Mr. Eakeley six of the officers and directors are partners in law firms.[1]

"The decision of whether to recuse from hearing a matter lies within the sound discretion of the trial judge . . ." United States v. Wilensky, 757 F. 2d 594, 599-600 (3d Cir. 1985). Were other considerations not at stake, I would be inclined to recuse myself from this case, because I would prefer not to sit in a matter in which a litigant has the slightest discomfort with me. However, the inquiry is not whether the particular litigant questions the impartiality of the judge; the question is whether a reasonable person with knowledge of the facts could question the impartiality of the court. Moreover, unless this level of doubt is reached, there are important

---

[1] There have been a few changes in the directors since the date of the list that accompanies the certification of Anthony V. D'Elia, Esq. as Exhibit B.

policy reasons why recusal should not be granted.

In my own case, during the course of 31 years on the bench, I have developed numerous personal friendships with members of the Bar and have participated in many charitable, legal and public service organizations in which lawyers, law firms and other judges have participated. This is probably the experience of most judges. To permit such associations to become grounds for recusal would either push judges towards a hermit like existence or open the floodgates to recusal motions.

Moreover, the Court of Appeals has affirmed denials of recusal motion in circumstances similar to those at issue here. In County of Hudson v. Janiszewski, 351 Fed. App'x 662, 668 (3d Cir. 2009), the Court held that Judge Pisano did not abuse his discretion in refusing to disqualify himself from presiding over a civil action in which the Plaintiff was represented by his former law firm - including attorneys whom he knew personally. In another case, Marcavage v. Bd. of Trustees of Temple Univ., 232 Fed. App'x 79, 83 (3d Cir. 2007), the Court of Appeals affirmed an Eastern District of Pennsylvania Judge's decision not to recuse herself based on the fact that she and the lead defense counsel were both members of the Pennsylvania Barrister's Association and the Temple Law School Alumni Association. In fact, defense counsel was the president of the former organization, which had given the judge an award during the pendency of the case. In the ceremony bestowing that honor, the defense counsel had stated that the judge was a "friend" of the Barristers' Association" who "gives both her time and her ear to Barristers' members." Id. at 82. The Court of Appeals held that:

> Common membership in a legal organization between a judge and counsel is not, by itself, enough to create a situation in which a judge's impartiality might reasonably be questioned. Any other rule

5

>would potentially preclude a substantial number of judges from presiding over cases before a large portion of the bar.  Similarly, in this case, the District Judge's minimal contacts with her law school alma mater contained in the record before us do not constitute grounds for disqualification.  Finally, the District Judge did not abuse her discretion when she declined to recuse herself because of her relationship with the lead defense counsel.  There are a variety of reasonable interpretations of defense counsel's statement that the District Judge is a "friend[] of the Barristers' Association" who "gives both her time and her ear to Barristers' members."  The District Judge stated that "a reasonable person would undoubtedly draw the conclusion that the Barristers' Association had my attention for the purpose of advancing its mission."  This interpretation of the defense counsel's statement is reasonable, and it certainly does not rise to the level of an abuse of discretion.

Id. at 83

I do not find that a reasonable person, with knowledge of all the facts, would conclude that my impartiality might reasonably be questioned in this case.  Further, recusal for any other reason would create a bad precedent and run counter to sound public policy.  Plaintiff's motion will be denied.  I will file an appropriate order.

June 22, 2010

*s/ Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
U.S.S.D.J.