**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZOFIA LEJA, individually and as administrator of the Estate of KAZMIERZ LEJA,<br><br>                              Plaintiff,<br><br>v.<br><br>SCHMIDT MANUFACTURING, INC., ET AL.<br><br>                              Defendants. | Civ. No. 01-5042 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

CHASAN, LEYNER & LAMPARELLO, P.C.
by: Anthony V. D'Elia, Esq.
300 Harmon Meadow Boulevard
Secaucus, NJ 07094

        *Attorneys for Plaintiffs*

LOWENSTEIN SANDLER, P.C.
by: David W. Field, Esq.
65 Livingston Avenue
Roseland, NJ 07068

GORDON & REES, L.L.P.
by: Elizabeth F. Lorell, Esq.
89 Headquarters Plaza North
Suite 1209
Morristown, NJ 07960

        *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a motion submitted by Plaintiff, Zofia Leja, for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) of the Court's March 31, 2010 Opinion and Order granting in part a request for summary judgment by Defendant Schmidt Manufacturing, Inc. ("Schmidt") and dismissing her wrongful death claim.  In the same ruling, the Court denied Plaintiff's request that she be allowed to introduce deposition testimony given by Robert Thompson, the former vice-president of Schmidt, in another proceeding.  See Leja v. Schmidt Mfg., Inc., 2010 WL 1372226 (D.N.J. 2010).

Plaintiff contends that the Court erred by concluding that the May 4, 2000 accident out of which this case arises was neither the cause in fact nor proximate cause of the decision by her husband, decedent Kazimierz Leja, to consume a lethal dose of alcohol on March 25, 2008.  In doing so, she argues that the Court wrongfully excluded testimony by her expert, Dr. David B. Brozyna, the psychiatrist who treated Mr. Leja during the period between the accident and his death.  Citing that testimony and two psychiatric articles that were not submitted in connection with the earlier proceedings, Plaintiff asserts that her husband's death was a foreseeable result of the May 4, 2000 accident and her wrongful death claim should be reinstated.  In the alternative, she contends that the Court should certify both the issue of whether the dismissal of her wrongful death claim was appropriate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Additionally, Plaintiff argues that the Court should reconsider its decision to bar the introduction at trial of Mr. Thompson's deposition testimony.  The Court found in its earlier ruling that the probative value of Mr. Thompson's testimony is outweighed by the dangers of unfair prejudice and jury confusion that would be created if it were introduced.  Specifically, the Court noted that Mr. Thompson's testimony (1) contained extensive references to severe injuries

– including decapitation in at least one instance – suffered by users of Schmidt machines in other cases, (2) was of little probative value due to Mr. Thompson's repeated statements that he did not remember key details, and (3) was cumulative of testimony given by other witnesses in this matter. Plaintiff contends that the latter two findings were incorrect, and that the prejudicial references contained in Mr. Thompson's testimony can be redacted before it is introduced at trial.

For the reasons set forth below, Plaintiff's Motion for Reconsideration will be granted in part and denied in part. After further consideration of the findings contained in Dr. Brozyna's report, the Court believes that it erred by holding that Plaintiff had not presented sufficient evidence to raise a factual question as to whether her husband's March 25, 2008 overdose was caused by the May 4, 2000 accident. Therefore, the Court will vacate the portion of its March 25, 2008 ruling granting summary judgment in favor of Schmidt on Plaintiff's wrongful death claim, and that claim will be reinstated. Plaintiff's arguments relating to Mr. Thompson's deposition testimony, however, will be rejected. Those arguments are, essentially, an effort to relitigate issues that were raised and decided in the earlier proceedings. As discussed below, such contentions cannot form the basis of a request for reconsideration.

## I. BACKGROUND

The facts relevant to the pending Motion were set forth at length in the Court's March 31, 2010 Opinion. See Leja, 2010 WL 1372226 at *3-4. For the sake of brevity, the Court incorporates the "background" section of that ruling and will refrain from repeating the majority of the information contained therein.

As discussed in that ruling, Kazimierz Leja suffered severe injuries on May 4, 2000 when he attempted to open a bulk sandblasting unit ("the machine") manufactured by Schmidt while

3

the machine was still pressurized. The injuries to his right arm were particularly severe, and required that the limb be amputated shortly after the accident.

On August 31, 2001, Mr. Leja and his wife Zofia – the current Plaintiff in this action – filed a Complaint against Schmidt in the Superior Court of New Jersey. In their Complaint, the Lejas alleged that the May 4, 2000 accident was caused by defects in the machine's design and Schmidt's failure to include proper warnings that would have prevented Mr. Leja from attempting to open the machine while it was still pressurized. Schmidt removed the action to this Court based on diversity of citizenship on October 30, 2001. The Lejas subsequently amended their Complaint to add several companies as Defendants, all of whom later entered settlement agreements and were voluntarily discharged from the proceedings.

Before his claims against Schmidt could be resolved, Mr. Leja died of an overdose of alcohol on March 25, 2008. Shortly thereafter, Plaintiff filed a Third Amended Complaint in which she asserted a wrongful death claim against Schmidt. In that claim, she alleged that her husband's decision to consume a lethal dose of alcohol on the day of his death was caused by the trauma he suffered as a result of the May 4, 2000 accident and subsequent amputation of his arm.

After allowing the parties to engage in supplemental discovery relating to the claims against Schmidt contained in Plaintiff's Third Amended Complaint, the Court on April 16, 2009 held a conference at which the parties agreed to a schedule for dealing with any outstanding issues that would have to be resolved prior to trial. Pursuant to a May 12, 2009 Scheduling Order memorializing the agreement reached at that conference, the parties on June 16, 2009 filed the several pretrial motions. Among them were Schmidt's Motion for Summary Judgment requesting that the Court dismiss the wrongful death claim and Plaintiff's Motion in Limine arguing that she should be allowed to introduce Mr. Thompson's deposition testimony at trial.

On March 31, 2010, the Court granted Schmidt's request for summary judgment on the wrongful death claim and rejected Plaintiff's assertion that she should be allowed to introduce Mr. Thompson's testimony.  In doing so, it held that the testimony of Plaintiff's own expert – Dr. David B. Brozyna, the psychiatrist who treated Mr. Leja during the period between the accident and his death – established that the May 4, 2000 accident was not the cause in fact of his March 25, 2008 overdose.  Cause in fact, which constitutes one of the two elements of causation, requires a plaintiff to demonstrate that "but for the acts complained of, the injury would not have occurred."  McCabe v. Ernst & Young, LLP, 494 F.3d 430 (3d Cir. 2007).  In his testimony, Dr. Brozyna "identified several potential causes for Mr. Leja's excessive drinking that were unrelated to the accident, including (1) his children reaching maturity and leaving home, (2) a recent visit by family members from Canada, and (3) the fact that Mr. Leja had met his daughter's boyfriend and his family for the first time just a few days earlier."  Leja, 2010 WL 1372226 at *7.  Since Plaintiff submitted no other evidence relating to causation, the Court found that any determination by the jury at trial that Mr. Leja's death was the result of the May 4, 2000 accident rather than any of the intervening causes pointed out by Dr. Brozyna would necessarily be based on conjecture.  Id.  Therefore, it granted summary judgment in favor of Schmidt on Plaintiff's wrongful death claim.  Id. (citing Reynolds v. Gonzales, 798 A.2d 67, 77 (N.J. 2002) ("A mere possibility of such causation [in fact] is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.")).

As an alternative basis for its ruling, the Court held that Plaintiff had failed to establish the second element of causation – proximate cause.  In doing so, it noted that the concept of proximate cause is an inherently "policy-based inquiry that requires a court to determine

5

whether, even if the defendant's actions were a cause in fact, the plaintiff's injury was so remote and unforeseeable that the defendant should not be held liable." Id. (citing Lynch v. Scheininger, 744 A.2d 113, 127 (N.J. 2000) (Proximate cause is "that combination of logic, common sense, justice, policy and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery.")). The Court ruled that the May 4, 2000 accident was not the proximate cause of Mr. Leja's March 25, 2008 overdose for two reasons: (1) there were several intervening factors – highlighted in Dr. Brozyna's expert report – that may have caused the latter event, and (2) the two were so remote in time that the first could "[]not fairly be said to have proximately caused the second." Id. at *8.

In addition to granting summary judgment in favor of Schmidt on Plaintiff's wrongful death claim, the Court's March 31, 2010 Opinion decided several Motions in Limine. In one of those Motions, Plaintiff had requested a declaratory ruling stating that she would be allowed to introduce at trial the deposition testimony of Robert Thompson, a former vice-president of Schmidt, in DeMas v. Schmidt, an earlier product liability litigated in California state court that involved the explosion of a machine similar to the one at issue in this case. Mr. Thompson was not able to appear for deposition in this case due to illness, and is now deceased.

Although Mr. Thompson's testimony would otherwise be admissible under the hearsay exception for "unavailable witnesses" contained in Federal Rule of Evidence 804, Schmidt contended that it should be excluded pursuant to Rule 401 because it was not relevant or, in the alternative, Rule 403 because it was more prejudicial than probative. The Court rejected the first argument, stating:

> Mr. Thompson testified that Schmidt's decision to affix metal warning labels to its machines was made in response to evidence that buyers were removing the adhesive warning labels, and thus goes directly to the question of whether the warning labels on the machine in this case – two of which were adhesive and

>were removed by Sylvan – were adequate.  Moreover, Mr. Thompson testified that he believed Schmidt included warning labels at the top of its machines near the opening to the pressure vessel – the very area where Plaintiff argues there should have been a visible pressure gauge or other warning device.  Therefore, the Court finds that Mr. Thompson's testimony is relevant to both Plaintiff's design defect and failure to warn claims and Schmidt's defense that Sylvan was the proximate cause of the May 4, 2000 accident because it removed warning labels from the machine.

Id. at *14.

Despite the fact the relevance of Mr. Thompson's testimony, the Court ruled that it should be excluded under Rule 403 due to (1) the "substantial danger that [it] would result in unfair prejudice to Schmidt," (2) the strong likelihood that it would "lead to confusion," and (3) the fact that it "would be cumulative of the other evidence that the parties will submit at trial." Id. at *15.  With regard to the first point, the Court noted that the deposition testimony Plaintiff sought to introduce contained "references to severe injuries – including decapitation in at least one instance – suffered by users of [Schmidt's] machines in the prior litigation." Id.  In holding that the introduction of Mr. Thompson's deposition testimony in the prior litigation would result in confusion, the Court found that the "probative value of [that] testimony is limited at best." Id. That finding was based on the fact that "Mr. Thompson's testimony is far from decisive; he repeatedly stated that he did not know when Schmidt began including metal warning plates on its machines and that he could not recall the process by which the company developed the warnings contained in its handbook." Id.  Finally, the Court noted that Mr. Thompson's testimony was cumulative of that given by "at least four other witnesses – including the former president of Schmidt, its former director of engineering, sales manager, and assembly foreman – that testified regarding the warning labels used by the company." Id.

## II.  DISCUSSION

Plaintiff now moves for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) of the Court's March 31, 2010 rulings granting summary judgment on her wrongful death claim and excluding Mr. Thompson's deposition testimony in the DeMas matter.  Plaintiff's arguments relating to the wrongful death claim are two-fold.  The first involves a misconstruction of the earlier ruling that appears to be based on one passage of that decision in which the Court referred to Dr. Brozyna's conclusion – that Mr. Leja's March 25, 2008 overdose was caused by the May 4, 2000 accident – as "speculative and unreliable."  Taking that statement to mean that the Court excluded Dr. Brozyna's testimony entirely, Plaintiff argues that she is entitled to a hearing on the admissibility of that expert report under Federal Rule of Evidence 104(a) and the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  Additionally, she submits two articles from psychological journals that she claims support the proposition that individuals, like Mr. Leja, who suffer from post-traumatic stress disorder ("PTSD") often develop alcoholism years after the events that led to their condition.  Based on those articles and Dr. Brozyna's testimony, Plaintiff contends that the Court erred by granting summary judgment in favor of Schmidt on her wrongful death claim.

If the Court refuses to reconsider its decision granting summary judgment on her wrongful death claim, Plaintiff argues that she should be allowed to undertake an interlocutory appeal of that ruling.  In support of that assertion, she invokes 28 U.S.C. § 1292(b), which allows a district court to certify an order for immediate appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion" and an interlocutory appeal "may materially advance the ultimate termination of the litigation."

Finally, Plaintiff contends that the Court erred by prohibiting the introduction at trial of Mr. Thompon's deposition testimony in the DeMas matter. In support of her request for reconsideration of that portion of the March 31, 2010 Opinion, she claims that the prejudicial nature of that testimony can be ameliorated by redacting any portions that refer to the injuries suffered by the plaintiffs in that case. In fact, Plaintiff now argues that, rather than introducing the entirety of Mr. Thompson's deposition, she should be allowed to submit a short excerpt for consideration by the jury. See (Pl.'s Br. Supp. Mot. Reconsideration 11) (stating that "Plaintiff only seeks to introduce the following testimony" and including an excerpt made up of less than one page of Mr. Thompson's deposition). Additionally, Plaintiff contends that Mr. Thompson's testimony was "clear and unambiguous as to the critical issue relating to the effectiveness of glued-on warning labels," and therefore would not lead to confusion. (Id. at 9.) Finally, Plaintiff asserts that Mr. Thompson's deposition testimony is not cumulative because the other four witnesses who testified regarding the warning labels used by Schmidt on its machines were not employed by the company when the decision to include metal warning labels was made.

### A. Standard of Review

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling.  See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'"  The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration."  Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling.  United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations omitted).  Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed.  See Grape, 549 F.3d at 603-04; N. River Ins., 52 F.3d 1218.  Mere "disagreement with the Court's decision" does not suffice.  P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp.2d 349, 353 (D.N.J. 2001).

**B. Wrongful Death Claim**

Plaintiff's request for reconsideration of the portion of the Court's ruling granting summary judgment in favor of Schmidt on her wrongful death claim will be granted.  As a preliminary matter, however, the Court finds no need for a hearing on the admissibility of Dr.

10

Brozyna's testimony under Federal Rule of Evidence 104(a) and Daubert.  The Court did not, as Plaintiff contends, "conclude[e] that [Dr. Brozyna's] opinion constituted pure speculation or conjecture."  (Pl.'s Br. Supp. Mot. Reconsideration 2) (emphasis added.)  Rather, it stated that – in light of the fact that Dr. Brozyna "identified several potential causes for Mr. Leja's excessive drinking that were unrelated to the accident" – that his "conclusion that Mr. Leja's excessive drinking on March 25, 2008 was attributable to the May 4, 2000 accident appear[ed] speculative and unreliable."  Leja, 2010 WL 1372226 at *7 (emphasis added).  In other words, the Court did not rule that Dr. Brozyna's report was inadmissible.  To the contrary, it explicitly relied on that report.  See Id. (citing to Dr. Brozyna's report and discussing the potential intervening causes of Mr. Leja's overdose noted therein).  There is no dispute that Dr. Brozyna is qualified to serve as an expert witness, and Schmidt has not challenged the scientific basis for his testimony.  Thus, that testimony is admissible – the only dispute is whether it includes sufficient evidence to allow a jury to infer that Mr. Leja's March 25, 2008 overdose was caused by the May 4, 2000 accident.

On further examination of the opinions contained in Dr. Brozyna's report, that question must be answered in the affirmative.  Dr. Brozyna testified at length about Mr. Leja's PTSD, stating that it developed shortly after the accident and continued with "waxing and waning symptomology" until his death.  (Field Decl., Ex. G at 1.)  He noted that the severity of Mr. Leja's symptoms increased based on "stressors like notices from the court [and] personal events at home such as his children moving out to go to school."  Id.  In light of that fact that such "stressors" increased the severity of Mr. Leja's PTSD, a jury could reasonably conclude that the intervening causes noted by the March 31, 2010 Opinion – "(1) his children reaching maturity and leaving home, (2) a recent visit by family members from Canada, and (3) the fact that Mr. Leja had met his daughter's boyfriend and his family for the first time just a few days earlier" –

11

were not "unrelated to the accident," as the Court stated in that ruling. Leja, 2010 WL 1372226 at *7. Rather, a jury could reasonably conclude that those events simply increased the severity of the psychological condition that Mr. Leja suffered from as a result of the May 4, 2000 accident, and but for that accident and his ensuing trauma, Mr. Leja would not have consumed a lethal dose of alcohol on the day of his death. Therefore, the Court finds that Dr. Brozyna's testimony raised a material dispute of fact on the question of whether the accident was the cause in fact of Mr. Leja's death.

Similarly, a jury could reasonably find based on Dr. Brozyna's testimony that the May 4, 2000 accident was the proximate cause of Mr. Leja's death. Under New Jersey law, "[p]roximate cause has been defined as any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Garrison v. Twp. of Middletown, 712 A.2d 1101, 1114 (N.J. 1998) (internal quotations omitted). In light of Dr. Brozyna's testimony that the so-called "intervening causes" on which the Court relied in its March 31, 2010 Opinion simply increased the severity of Mr. Leja's PTSD, a jury could conclude that those events did not break the "natural and continuous sequence" between the accident and his death. To the contrary, Dr. Brozyna's report supports the inference that Mr. Leja's overdose of alcohol was, although chronologically remote from the accident, the direct result of his injuries and attendant trauma. Accordingly, the Court finds that Plaintiff has presented sufficient evidence to allow a jury to find that the May 4, 2000 accident was both the cause in fact and proximate cause of her husband's death.

In light of the foregoing, a jury could reasonably find in Plaintiff's favor on her wrongful death claim. Under such circumstances, refusal to grant reconsideration would result in manifest

injustice by precluding what may otherwise be a meritorious cause of action. Therefore, the Court will grant reconsideration of the portion of its March 31, 2010 Opinion granting summary judgment in favor of Schmidt on Plaintiff's wrongful death claim, and that claim will be reinstated.[1]

**C. Thompson Testimony**

In contrast, Plaintiff's request for reconsideration of the Court's ruling excluding Mr. Thompson's deposition testimony in the DeMas matter must be rejected. As discussed above, Plaintiff asserts three arguments in support of that request. First, she contends for the first time that, rather than submitting the entirety of Mr. Thompson's testimony to the jury, she should be allowed to use a brief excerpt of that testimony that does not include prejudicial references to the injuries suffered in the DeMas case. Additionally, she claims Court erred in holding that Mr. Thompson's testimony was (1) of little probative value and likely to lead to confusion, and (2) cumulative of that given by other witnesses.

The latter two arguments are nothing more than an attempt to relitigate issues that were decided in the March 31, 2010 ruling. As such, they cannot form a proper basis for reconsideration. N. River Ins., 52 F.3d 1218; Resorts Int'l, 830 F. Supp. at 831. Moreover, Plaintiff's substantive argument that the Court erred in holding that Mr. Thompson's testimony was of limited probative value is unconvincing. Plaintiff cites no new evidence in support of her contention that Mr. Thompson's testimony was "clear and unambiguous." (Pl.'s Br. Supp. Mot. Reconsideration 9.) In fact, other than conclusory statements to that effect, Plaintiff presents nothing whatsoever to rebut the Court's earlier ruling that "Mr. Thompson's testimony is far from decisive." Leja, 2010 WL 1372226 at *15 (noting that Mr. Thompson "repeatedly stated

---

[1] In light of the fact that Plaintiff's request for reconsideration of the portion of the Court's March 31, 2010 decision relating to her wrongful death claim will be granted, her contention that she is entitled to pursue an interlocutory appeal of that ruling need not be addressed.

that he did not know when Schmidt began including metal warning plates on its machines and that he could not recall the process by which the company developed the warnings contained in its handbook."). Similarly, Plaintiff's assertion that Mr. Thompson's testimony is not cumulative of the other four witnesses who testified regarding the metal warning labels because those four witnesses were not at Schmidt when the decision to include such labels was made is unavailing. As noted above, Mr. Thompson testified that he did not remember when the company decided to start including metal warning labels on its machines or the process by which those labels were developed. Id. In light of the fact that he did not remember those developments – which are the very ones on which Plaintiff claims he had personal knowledge was employed by Schmidt at the time – Mr. Thompson's testimony will not add any information to the proceedings at trial beyond that contained in the statements of the other four witnesses.

Plaintiff's request that she be allowed to submit a short excerpt from Mr. Thompson's testimony is also unavailing. That request, which is aimed at ameliorating the Court's concern over the possibility that Mr. Thompson's testimony would have a prejudicial effect because it contains extensive references to the injuries suffered by the plaintiffs in the DeMas action, ignores the basis for introducing his testimony. Mr. Thompson's deposition testimony is admissible under Federal Rule of Evidence 804(b)(1) only because Schmidt was a party to the DeMas case and had a similar motive to develop that testimony through cross-examination as it would if Mr. Thompson appeared at trial in this matter. See Id. at *14 (noting that Mr. Thompson's deposition falls under the "former testimony" hearsay exception contained in Rule 804(b)(1)). The excerpt Plaintiff proposes to introduce omits the questions posed by Schmidt during Mr. Thompson's cross-examination and his responses to those queries. See (Pl.'s Br. Supp. Mot. Reconsideration 11.) Consequently, introduction of that excerpt would effectively

rob Schmidt of the opportunity to develop his testimony, rendering it inadmissible hearsay.  See Fed. R. Evid. 802 (stating the general rule that hearsay is inadmissible).  Therefore, the Court rejects Plaintiff's Motion for Reconsideration of its March 31, 2010 ruling that Mr. Thompson's deposition testimony in the DeMas matter must be excluded.

### III.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Reconsideration is granted in part and denied in part.  The portion of the Court's March 31, 2010 ruling granting summary judgment in favor of Schmidt on Plaintiff's wrongful death claim will be vacated, and that claim will be reinstated.

The Court will enter an Order implementing this Opinion.


　　　　　　　　　　　　　　　　　　　　　_s/ Dickinson R. Debevoise_____
　　　　　　　　　　　　　　　　　　　　　DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  July 1, 2010