**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZOFIA LEJA, individually and as administrator of the Estate of KAZMIERZ LEJA,<br><br>          Plaintiff,<br><br>v.<br><br>SCHMIDT MANUFACTURING, INC., ET AL.<br><br>          Defendants. | Civ. No. 01-5042 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

CHASAN, LEYNER & LAMPARELLO, P.C.
by: Anthony V. D'Elia, Esq.
300 Harmon Meadow Boulevard
Secaucus, NJ 07094

     *Attorneys for Plaintiffs*

LOWENSTEIN SANDLER, P.C.
by: David W. Field, Esq.
65 Livingston Avenue
Roseland, NJ 07068

GORDON & REES, L.L.P.
by: Elizabeth F. Lorell, Esq.
89 Headquarters Plaza North
Suite 1209
Morristown, NJ 07960

     *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a motion submitted by Defendant Schmidt

Manufacturing, Inc. ("Schmidt") for reconsideration pursuant to Federal Rule of Civil Procedure

60(b) of the Court's Opinions and Orders of June 7 and August 17, 2005.[1]  In the former, the

Court ruled that it lacks personal jurisdiction over another company named by Schmidt as a

third-party defendant, Sypris Technologies, Inc. ("Sypris").[2]  See Leja v. Schmidt Mfg., Inc.,

2005 WL 1366533 (D.N.J. 2005) (hereinafter "Leja I").  In the latter, the Court denied Schmidt's

request for reconsideration of that ruling.  See Leja v. Schmidt Mfg., Inc., 2005 WL 2009924

(D.N.J. 2005) (hereinafter "Leja II").

In its pending Motion for Reconsideration, Schmidt contends that the Supreme Court of

New Jersey's recent decision in Nicastro v. McIntyre Machinery America, Ltd., 987 A.2d 575

(N.J. 2010), authorizes the Court to exercise personal jurisdiction over Sypris.  Specifically,

Schmidt argues that Nicastro supports the proposition that a state may assert personal jurisdiction

over a manufacturer who inserted its products into the "stream of commerce" as long as that

manufacturer knew or should have known that those products would make their way to that state.

The Court rejected that assertion in its earlier rulings, stating that "the mere foreseeability that a

product one sells may end up in the forum state does not render the seller amenable to suit in the

forum state."  Leja I, 2005 WL 1366533 at * 4 (quoting Pennzoil Prods. Co. v. Colelli &

Assocs., Inc., 149 F.3d 197, 203 (3d Cir. 1998)).  Accordingly, although Schmidt admits that

Nicastro did not change the applicable law relating to personal jurisdiction, it contends that the

---

[1] In its Motion, Schmidt referred to those rulings by the dates on which they were signed, June 3
and August 15, 2005, respectively.  It appears that the rulings in question were not entered onto
the docket maintained by the Court until a few days after they were issued, and that the date of
their entry was used by the various reporting agencies that track such judgments.  Therefore, for
the sake of clarity the Court will use the dates on which its rulings were entered – June 7 and
August 17, 2005 – to denote those judgments when discussing them in this Opinion.
[2] Sypris was formerly known as "Tube Turns Technologies, Inc."

2

Supreme Court of New Jersey's analysis in that case fundamentally contradicts this Court's earlier rulings, and requires that they be reconsidered.

For the reasons set forth below, the pending Motion for Reconsideration will be denied. First, Schmidt's motion is untimely.  The decision on which Schmidt's arguments rely was issued over six months before the company filed its request for reconsideration.  Yet despite engaging in multiple communications and appearing in at least one oral argument during that time period, Schmidt made no effort to bring the ruling on which it now relies to the attention of the Court.  While such a delay might not be unreasonable under normal circumstances, it was unjustified given the exceptionally protracted history of this case, the delay that would be inherent in reintroducing Sypris to the case, and the potential prejudice Plaintiff would suffer from that delay.  Even if Schmidt's motion had been submitted within a reasonable time, it fails to point to any new evidence that was not previously available, an intervening change in law, or the need to prevent manifest injustice.  Therefore, Schmidt has not asserted a proper basis for reconsideration.  Finally, the portions of <u>Nicastro</u> on which Schmidt bases its request for reconsideration impermissibly expand the jurisdictional scope of the stream of commerce theory beyond the limits enumerated in previous decisions by the Supreme Court of the United States. Therefore, those parts of <u>Nicastro</u> must be disregarded, and the pending Motion for Reconsideration must be denied.

## I. BACKGROUND

The facts relevant to the pending Motion were set forth at length in the Court's June 7 and August 17, 2005 Opinions.  <u>See</u> <u>Leja I</u>, 2005 WL 1366533 at *1-3; <u>Leja II</u>, 2005 WL 2009924 at *1-4.  In order to provide context for today's ruling, some of the background discussed in those Opinions will be repeated below.

This matter arises out of an industrial accident.  On May 4, 2000, decedent Kazimierz Leja suffered severe injuries when he attempted to open a bulk sandblasting unit ("the machine") manufactured by Schmidt while it was still pressurized.  The machine operated by releasing an abrasive stream of gas and liquid, which was propelled by tension built up by pumping air into the "pressure vessel" located at its apex.  In order to refill the liquid abrasive materials within the machine, its operator was required to periodically execute a "blow-down" procedure in which the pressure built up inside was released by activating a valve located on its side.  The operator would then climb a ladder and open a metal lid at the top of the pressure vessel known as the "camlock closure," which was secured by five T-bolts.[3]

The machine was custom-built by Schmidt in 1996 for the Sylvan Equipment Corporation ("Sylvan") which acts as a machinery distributor and has its primary place of business in New York.  In doing so, Schmidt assembled various component parts that were produced by other manufacturers.  Included among those parts was the camlock closure, which was designed and manufactured by Sypris.

Sylvan leased the machine to L&L Painting Company ("L&L"), a New York company, for use in the removal of paint from the Outerbridge Crossing – a bridge that runs between Staten Island, New York, and Elizabeth, New Jersey.  When it proved inadequate for that task, Sylvan took the machine back from L&L and sold it to Mr. Leja's employer, the West Virginia Paint and Tank Company ("WVP").

The day of the accident, Mr. Leja attempted to open the camlock closure without first releasing the pressure inside the machine by activating the blow-down valve.  The result was disastrous:  pressure stored inside the machine caused an explosion that propelled the lid of the

---

[3] Although his employer never provided him with written instructions on how to safely refill the machine, it is undisputed that Mr. Leja was aware of the procedure and had completed the process at least 100 times before the date of his accident.

camlock closure and several pieces of shrapnel upward into Mr. Leja's body.  The injuries to his right arm were particularly severe, and required that the limb be amputated shortly after the accident.[4]

On August 31, 2001, Mr. Leja and his wife Zofia filed a Complaint against Schmidt in the Superior Court of New Jersey alleging that the May 4, 2000 accident was caused by defects in the machine's design and Schmidt's failure to include proper warnings that would have prevented Mr. Leja from attempting to open the machine while it was still pressurized.  Schmidt removed the action to this Court based on diversity of citizenship on October 30, 2001.  The Lejas subsequently amended their Complaint to add several companies as Defendants, all of whom later entered settlement agreements and were voluntarily discharged from the proceedings.

On July 13, 2004, Schmidt filed a third-party Complaint in which it alleged that Sypris defectively designed the camlock closure.  On the basis of that allegation, Schmidt argued that, if it was found liable to Plaintiffs, it would be entitled to indemnification and contribution from Sypris.

Arguing that it lacked the minimum contacts with New Jersey necessary for this Court to exercise jurisdiction, Sypris moved to dismiss the third-party claims asserted against it by Schmidt pursuant to Federal Rule of Civil Procedure 12(b)(2).  Schmidt subsequently sought leave to amend its third-party Complaint.  The Court granted that request on December 14, 2004, and Schmidt filed an Amended Third-Party Complaint against Sypris nine days later.  Relying on many of the same arguments it articulated in its original request, Sypris filed a renewed Motion to Dismiss for lack of personal jurisdiction on January 7, 2005.  After a series of adjournments, Schmidt submitted opposition to that Motion on May 9, 2005.  Sypris replied on May 16th, and

---

[4] Mr. Leja died of alcohol poisoning on March 25, 2008.  His widow, Plaintiff Zofia Leja, subsequently filed an Amended Complaint in which she asserts claims on behalf of herself and his estate.

the Court held oral arguments at which both parties were allowed to articulate their respective positions on May 23, 2005.

## A.  The June 7, 2005 Ruling

In a ruling dated June 7, 2005, the Court held that it lacks personal jurisdiction over Sypris and granted that company's Motion to Dismiss the third-party claims asserted against it by Schmidt.  In doing so, it first distinguished between the two types of personal jurisdiction – specific and general – stating:

> Personal jurisdiction comes in two varieties, at least one of which the court must have over Sypris in order to hear the third party claims against it.  One variety is known as specific personal jurisdiction, which would exist if the cause of action arises out of or is related to Sypris's contacts with New Jersey.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  The court must determine whether Sypris has established sufficient minimum contacts with New Jersey.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  Sypris's conduct and connection with New Jersey must be such that it could reasonably anticipate being haled into court here.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Additionally, Sypris must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Rudzewicz, 471 U.S. at 475.  To summarize, specific jurisdiction exists if Sypris "purposely created contacts" with New Jersey, making it reasonable for him to anticipate being haled into court there.  CSR Ltd. v. Fed. Ins. Co., 141 F. Supp. 2d 484, 490 (D.N.J. 2001).
>
> Where the cause of action does not arise out of Sypris's forum activities, a court may exercise another variety of personal jurisdiction known as general personal jurisdiction if Sypris has engaged in "continuous and systematic" contacts with New Jersey.  Helicopteros, 466 U.S. at 414-15.  If "continuous and systematic" contacts exist, Sypris could reasonably anticipate being haled into court with respect to any cause of action.  Therefore, general jurisdiction requires "a very high threshold of business activity."  Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (citation omitted).  The facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. v. Watson, Ess, Marshall, 675 F.2d 587, 589 (3d Cir. 1982).

Leja I, 2005 WL 1366533 at *3.[5]

_____

[5] The phrase "extensive and persuasive," as used by the Court of Appeals in Reliance Steel, appears to be based on a mistaken quotation of an earlier decision by that Court, in which Judge

The Court then ruled that it had neither specific nor general personal jurisdiction over Sypris.

That ruling was based on an extensive analysis of the contacts between Sypris and New Jersey.

> With respect to specific personal jurisdiction, the Court noted that:
>
> > In this case, Plaintiffs' cause of action does not arise out of, and is not related to, Sypris's contacts with New Jersey.  Sypris did not purposefully sell or direct the top closure which allegedly caused Leja's injuries to New Jersey.  In fact, the Sandblaster to which the top closure was attached arrived in New Jersey only after multiple transactions and travels to interim locations outside of New Jersey. Sypris sold the top closure to Schmidt and shipped the top closure to Texas, where Schmidt incorporated the top closure into its Sandblaster.  The subsequent travels and eventual resting place of the Sandblaster in New Jersey was not the result of Sypris's purposeful conduct.  Rather, the eventual sale of the Sandblaster to Leja's employer in New Jersey was a "random, fortuitous, or attenuated contact" that is insufficient to exercise specific personal jurisdiction.  See Rudzewicz, 471 U.S. at 475.  After Sypris sold and shipped the top closure to Schmidt in Texas, all subsequent events – i.e., Schmidt's subsequent sale of the Sandblaster to Sylvan, which then sold it to Bobcat and L&L Painting, which then returned it to Sylvan, which then sold it to Leja's employer – cannot be attributed to the purposeful conduct of Sypris.

Id. at *5.

In deciding that it lacked specific personal jurisdiction over Sypris, the Court explicitly rejected Schmidt's arguments that it could exercise such jurisdiction under the "stream of commerce" theory announced by the Supreme Court of the United States in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), and further discussed in Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102 (1987).  As the Court noted in its June 7, 2005 Opinion, the latter case resulted in two plurality opinions which presented "different conceptions" of the amount and pervasiveness of contacts between a litigant and a

---

Gibbons opined that the contacts necessary to establish personal jurisdiction must be "extensive and pervasive."  Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 890 (3d Cir. 1981) (Gibbons, J., dissenting) (emphasis added).  Since being used in Reliance Steel, the phrase has been repeated without correction by various Courts citing that ruling.  Despite that error, the decisions that have used the "extensive and persuasive" standard have applied the test for establishing personal jurisdiction in keeping with its original intent – in essence, they have examined the contacts of foreign defendants with the forum at issue to determine whether they were pervasive.

given forum necessary to result in "purposeful availment of through the stream of commerce."
Leja I, 2005 WL 1366533 at *5 (quoting Pennzoil, 149 F.3d at 204). The first, authored by
Justice O'Connor, held that "placement of a product in the stream of commerce must be
accompanied by some additional conduct of the defendant that may indicate an intent or purpose
to serve the market in the forum State." Id. (citing Asahi, 480 U.S. at 112). Examples of such
conduct include "designing the product for the market in the forum State, advertising in the
forum State, establishing channels for providing regular advice to customers in the forum State,
or marketing the product through a distributor who has agreed to serve as the sales agent in the
forum State." Asahi, 480 U.S. at 112. The second plurality opinion in Asahi, authored by
Justice Brennan, defined the stream of commerce theory more broadly, holding that a "forum
state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction
over a corporation that delivers its products into the stream of commerce with the expectation
that they will be purchased by consumers in the forum State." Id. at 119-20 (emphasis in
original).

    After examining the relevant contacts between Sypris and New Jersey, the Court ruled
that it lacked specific personal jurisdiction under either standard. With respect to Justice
O'Connor's requirement that a company placing a product in the stream of commerce commit
some additional act indicating an intent to avail itself of the forum state's law before being
subjected to specific personal jurisdiction, the Court noted that "[t]he record is devoid of such
evidence of 'purposeful availment' during the relevant time period" of 1995-1996 – the years in
which Sypris manufactured the camlock enclosure that Schmidt eventually incorporated into the
machine at issue in this case. Leja I, 2005 WL 1366533 at *5. Even under Justice Brennan's

broader conception of the stream of commerce theory, the Court ruled that it lacked jurisdiction,

stating:

> Essentially, Schmidt argues that because it was foreseeable that the Sandblaster "would come to rest and be used in New Jersey as well as in any other state" (Opp'n Br. at 12), Sypris had "'fair warning' and knew full well that its closure in Schmidt's equipment would end up in New Jersey." (Id. at 13.) Schmidt's argument fails because "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Lebel v. Everglades Marina, Inc., 115 N.J. 317, 324 (N.J. 1989) ("the mere foreseeability of an event in another state is not a sufficient benchmark for exercising personal jurisdiction") (citation and internal quotations omitted). Furthermore, the main focus is not on the relationship of the parties but the relationship between Sypris and New Jersey. Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990). Therefore, the mere conduct of business between Sypris and Schmidt, which Sypris allegedly knew was a national distributor, is not evidence of purposeful availment. Even if Sypris had an expectation that the Sandblaster which entered the stream of commerce in 1995 or 1996 would be purchased by a New Jersey consumer, "the mere foreseeability that a product one sells may end up in the forum state does not render the seller amenable to suit in the forum state." Pennzoil, 149 F.3d at 203 (citation omitted). Once Sypris consummated a sale to Schmidt, subsequent transfers of Schmidt's products which incorporated Sypris's component parts would generally be of little interest to Sypris. See Helicopteros, 466 U.S. at 416-17 ("Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer."). Moreover, Sypris did not ship to New Jersey any top closures that it sold to Schmidt, which attenuates the foreseeability factor.

Id. at *6.

After addressing specific personal jurisdiction, the Court turned to whether Sypris's

contacts with New Jersey were sufficiently "continuous and systematic," Helicopteros, 466 U.S.

at 416, to support the exercise of general personal jurisdiction. Before answering that question in

the negative, the Court engaged in an extensive discussion of two categories of activity – sales

and solicitation – engaged in by Sypris during the ten-year period from 1995 to 2004 that

Schmidt claimed supported general personal jurisdiction.

With respect to sales activity, the Court first outlined the parties' arguments and then applied the decision by the Court of Appeals for the Third Circuit in <u>Provident National Bank v. California Federal Savings & Loan Association</u>, 819 F.2d 434 (3d Cir. 1987), stating:

> Schmidt alleges that Sypris has sold at least 6,668 products worth over $3.7 million in sales to over 80 New Jersey companies between 1995 and 2004; that Sypris has sold over 1,000 top closures to Schmidt over the last twenty years, knowing that Schmidt was a national distributor of products; and that Sypris derives substantial income from regular and continuous business contacts with New Jersey customers.  Sypris, on the other hand, argues that less than one percent of Sypris's products are ordered by New Jersey customers and less than one percent of Sypris's total revenue is generated by sales to New Jersey customers.

> The Court of Appeals has noted that the percentage and absolute amount of sales is generally irrelevant.  <u>Provident</u>, 819 F.2d at 438.  Rather, the focus should be on whether the nature of defendant's contacts with the forum state was central to the conduct of its business.  <u>Id.</u>  In <u>Provident</u>, the Court of Appeals based its finding of general jurisdiction on the fact that the defendant bank conducted business regarding its zero-balance account with a bank in the forum state every business day.  <u>Id.</u> (finding "[t]his daily contact was a continuous and central part" of defendant's business).  This daily contact was enough to find general jurisdiction, even though the amount of "bread and butter" activities, *i.e.*, the borrowing and lending of money, in the forum state was small – 0.066% of its depositors were in the forum state (700 – 1,000 depositors), which accounted for 0.071% (or $10 million in deposits) of the defendant's total deposits, and 0.083% (or $10 million in outstanding loans) of the defendant's outstanding loans were made to forum state residents.  <u>Id.</u>

> The situation in this case is different from the situation in <u>Provident</u>.  Like the defendant bank's business in <u>Provident</u>, the percentage of Sypris's business in New Jersey is not substantial, and the activity in New Jersey is the "bread and butter" of Sypris's business in the broad sense that Sypris is in the business of selling component parts.  The Court of Appeals in <u>Provident</u>, however, did not find that "bread and butter" activities created general jurisdiction.  Rather, the Court of Appeals found that the defendant bank's daily activity in its zero-balance bank account was the decisive contact for establishing general jurisdiction.  <u>Id.</u>  In contrast, Sypris has no analogous daily or regular contact with New Jersey that is central to the functioning of its business.  Just as the number of forum state loans in <u>Provident</u> would not have been sufficient to form a basis for general jurisdiction, so too Sypris's New Jersey sales are insufficient to support a finding

of continuous and systematic business.  See Modern Mailers v. Johnson & Quin, Inc., 844 F. Supp. 1048, 1054 (E.D. Pa. 1994).

Id. at *7.

Similarly, the Court ruled that Sypris's solicitation activity over the period between 1995 and 2004 was insufficient to support the exercise of general personal jurisdiction.  As noted in the June 7, 2005 ruling, Schmidt alleged that (1) "Sypris solicited business in New Jersey by sending the following items to New Jersey:  brochures, catalogs, an informational letter to a potential New Jersey customer, a notice of name change, and Christmas cards," (2) "Sypris s[old] to six distributors in New Jersey which [we]re Sypris's de facto sales representatives, and that since 1999 two Sypris employees have traveled to New Jersey, one of which was a sales representative sent to New Jersey in 2002 in response to a service request from New Jersey customer," and (3) "that Sypris 'has sent and received thousands of pages of facsimile and wire communications concerning its business with New Jersey customers; has over one thousand engineering documents in connection with its work with New Jersey customers, and has prepared hundreds of test reports certifying that its products sold in New Jersey conform with all applicable codes.'"  Id. at *8 (quoting (Schmidt's Br. Opp'n to Sypris's Mot. Dismiss 10)).

Based on those allegations and Schmidt's accompanying exhibits, the Court agreed that "Sypris apparently has solicited business in New Jersey."  Id.  It found, however, that such solicitation alone was insufficient to support general personal jurisdiction.  Rather, it applied the "solicitation plus" test.  That test is predicated on the idea that business activities which constitute "nothing more than … solicitation" are "not enough to bring the defendant within the district" in which the solicitation occurred for the purposes of personal jurisdiction.  Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 533-34 (1907); see also Int'l Harvester Co. of Am. v. Kentucky, 234 U.S. 579, 587 (1914) (finding personal jurisdiction in a cases

11

where "there was something more than mere solicitation").  Thus, under the "solicitation plus" test, sporadic telephone calls and mail communications are an insufficient basis for personal jurisdiction, but may justify the exercise of such jurisdiction if they are accompanied by or integral to other conduct such as the negotiation of contracts executed in the forum state.  See Electro-Catheter Corp. v. Surgical Specialties Instrument Co., Inc., 587 F. Supp. 1446, 1455 (D.N.J. 1984) ("While, in isolation, telephone and mail communications may not establish a substantial connection between a nonresident and a forum, when these communications form an integral part of an ongoing business relationship, such contacts are relevant in assessing the nature and extent of defendant's conduct within a forum.").

Turning to the specific facts of this case, the Court ruled that "Sypris's activity in New Jersey is not central to Sypris's business," and the solicitations it allegedly sent to New Jersey were not sufficiently "substantial and continuous" to meet the "solicitation plus" test.  Leja I, 1366533 at *8.  Contrary to Schmidt's contention that Sypris's communications with customers in New Jersey were substantial, the Court stated that:

> The record does not show how often Sypris sent brochures or catalogs to New Jersey companies.  Rather, the evidence shows that Sypris sent brochures to a New Jersey customer in response to the customer's request, and that one New Jersey customer received two sales brochures, one of which was received in or about 1995 and the other in or about 1999; these activities hardly constitute substantial or continuous activity.  As for sending a notice of name change, it would be reasonable to assume that sending such notices would rarely occur because companies do not change their names continuously.  Sending Christmas cards, which would occur once a year, would not be continuous or substantial activity.  All of these activities are better characterized as sporadic, intermittent contacts rather than substantial and continuous.

Id.

With respect to Schmidt's contention that Sypris availed itself of New Jersey law by sending sales representatives to that state and selling its products to distributors there, the Court ruled that:

> Six distributors in New Jersey and two visits by Sypris employees since 1999 also do not constitute substantial and continuous solicitation activity.… Since 1988, Sypris has not had a sales agent in New Jersey.… In this case, there is no evidence that Sypris exerted such control over any of the distributors in New Jersey, which Sypris contends are independent distributors. Furthermore, "no court has ever held that the maintenance of even a substantial sales force within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action." Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240, 1242 (9th Cir. 1984). Here, Sypris did not maintain a substantial sales force in New Jersey. The two Sypris employees who have visited New Jersey since 1999 do not constitute a sales force, and six independent distributors which are not controlled by Sypris can hardly be characterized as Sypris's sales force.

Id.

Finally, the Court held that, while Sypris's communications with individuals and entities in New Jersey weighed in favor of finding general personal jurisdiction, they did not overcome the other factors, stating:

> With respect to facsimile and e-mail communications, although they may be used to support the exercise of personal jurisdiction, they do not themselves establish jurisdiction. Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 521, 523 (8th Cir. 1996) (finding no personal jurisdiction despite evidence of "dozens of letters and faxes and numerous phone calls" between defendant and forum state). See also Noonan v. Winston Co., 135 F.3d 85, 92-93 (1st Cir. 1998) (finding no personal jurisdiction despite non-resident company's regular and frequent telephone calls, faxes and letters to resident company). Accordingly, evidence of facsimile and e-mail communications may weigh in favor of exercising jurisdiction, but they will not establish general jurisdiction if other evidence does not sufficiently weigh in favor. With respect to the engineering documents and test reports, Schmidt has not shown how these documents add to the jurisdictional analysis; these documents could simply be part of the package of goods sold rather than evidence of additional activity purposefully directed at New Jersey. Nevertheless, the engineering documents and test reports will be considered as evidence weighing in favor, but not dispositive, of general jurisdiction.

Id. at *9.

13

Summarizing its ruling, the Court noted that several factors weighed heavily against the exercise of general personal jurisdiction, stating:

> Taken together, Sypris's solicitation activity and sales activity do not establish contacts which are so "continuous and systematic" that Sypris should expect to be haled into New Jersey on any cause of action.  Sypris is a Kentucky-based manufacturer of component parts that does not have an office, plant or distribution center in New Jersey, does not own property in New Jersey, does not maintain inventory in New Jersey, does not have employees in New Jersey, does not employ a sales representative or sales agent in New Jersey and has not employed such since 1999, has not applied for a license to do business in New Jersey, and does not maintain any bank accounts or post office addresses in New Jersey.  Sypris's sales to New Jersey customers, limited solicitation of and communications with New Jersey companies do not rise to the level of "continuous and systematic" or "continuous and substantial" contacts.

Id.

Therefore, the Court held that it lacked either specific or general personal jurisdiction over Sypris, and dismissed Schmidt's third-party claims against that company.

**B.  The August 17, 2005 Opinion**

On June 20, 2005, Schmidt moved for reconsideration pursuant to Federal Rule of Civil Procedure 60(b) of the Court's June 7, 2005 ruling.  In support of its motion, Schmidt asserted three main arguments – each of which related to general personal jurisdiction rather than specific.  See Leja II, 2005 WL 2009924 at *2 ("[T]he June Opinion and Order found that specific personal jurisdiction was lacking.  Schmidt apparently does not contest this finding in this motion for reconsideration.  Rather, the arguments presented by Schmidt pertain only to the court's finding that general personal jurisdiction is also lacking.").  First, Schmidt contended that the Court erred in its June 7, 2005 decision by relying on the ruling by the Court of Appeals in Provident, 819 F.2d at 434, because that case dealt with Pennsylvania law, while the question of

whether the Court may exercise personal jurisdiction over Sypris in this litigation is governed by

New Jersey's long-arm statute.  The Court rejected that argument, stating:

> It is true that <u>Provident</u> concerned Pennsylvania's long-arm statute, not New
> Jersey's.  It is also true, however, that Pennsylvania's long-arm statute in
> <u>Provident</u> is identical to New Jersey's long-arm statute – i.e., both states' long-
> arm statutes permit the exercise of personal jurisdiction to the fullest extent
> allowed under the U.S. Constitution.  Accordingly, the test of whether a
> defendant's contacts with the state were "central" to its business enunciated by the
> Court of Appeals in <u>Provident</u> was equally applicable in deciding Sypris's motion
> to dismiss for lack of personal jurisdiction.

<u>Leja II</u>, 2005 WL 2009924 at *2.

In its second argument, Schmidt claimed that the Court erred by ruling that the contacts

used to justify the exercise of general personal jurisdiction over Sypris must be "extensive and

persuasive."  <u>See</u> <u>Leja I</u>, 2005 WL 1366553 at *3.  Echoing its first argument, Schmidt argued

that the case cited in support of that proposition in the Court's June 7, 2005 Opinion, <u>Reliance</u>

<u>Steel</u>, 675 F.2d at 589, was inapplicable because it dealt with Pennsylvania law rather than that

of New Jersey.  The Court rejected that contention, stating:

> Although [it] is true [that <u>Reliance Steel</u> deals with Pennsylvania law], the
> "extensive and persuasive" language does not introduce a new standard but
> merely describes the much higher threshold required to assert general jurisdiction
> than specific jurisdiction.  Moreover, the "extensive and persuasive" language has
> been used in numerous court opinions applying New Jersey law, which have cited
> <u>Reliance Steel</u>.  <u>E.g.</u>, <u>Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.</u>, 269 F. Supp.
> 2d 547, 559 (D.N.J. 2003) ("The facts required to assert this 'general' jurisdiction
> must be 'extensive and persuasive.'"); <u>SDS USA, Inc. v. Ken Specialties, Inc.</u>,
> Civ. No. 99-133, 2002 U.S. Dist. LEXIS 16762 (D.N.J. Aug. 28, 2002)
> ("Moreover, the facts required to establish general jurisdiction must be 'extensive
> and persuasive.'"); <u>Smith v. S&S Dundalk Eng'g Works, Ltd.</u>, 139 F. Supp. 2d
> 610, 618 (D.N.J. 2001) ("The facts required to establish general jurisdiction must
> be 'extensive and persuasive.'"); <u>Bryan v. Associated Container Transp.</u>, 837 F.
> Supp. 633, 637 (D.N.J. 1993) ("The burden of establishing 'general jurisdiction'
> is more difficult 'for the facts required to assert general jurisdiction must be

extensive and persuasive.'"").  Accordingly, this argument does not convince the court to grant reconsideration.

<u>Leja II</u>, 2005 WL 2009924 at *3.[6]

Finally, Schmidt argued that the Court erred by applying the "solicitation plus" test.  The company based that argument on a decision in which the Appellate Division of the Superior Court of New Jersey held that the Supreme Court's seminal ruling on personal jurisdiction in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945), was an "implicit rejection of the … 'solicitation plus' doctrine."  <u>Americoat Corp. v. Regent Chemical & Research Group, Inc.</u>, 261 A.2d 380, 384 (N.J. Super. Ct. App. Div. 1970).  The Court found the continued viability of the "solicitation plus" test irrelevant, holding that:

> [T]he analysis contained in the June Opinion … remains valid even if the "solicitation plus" test is inapplicable.  The analysis in the June Opinion found that Sypris's solicitation activities "are better characterized as sporadic, intermittent contacts rather than substantial and continuous."  The June Opinion analyzed Sypris's activities and found them to be wanting because they were not sufficiently continuous and systematic to justify the exercise of general personal jurisdiction.
>
> Furthermore, the solicitation plus analysis was but one of several considerations used to analyze personal jurisdiction.  Taking Sypris's contacts into consideration, the finding does not change.  Sypris's contacts are not enough to establish general personal jurisdiction under any test.

<u>Leja II</u>, 2005 WL 2009924 at *3 (quoting <u>Leja I</u>, 2005 WL 1366553 at *8).

---

[6] As discussed <u>supra</u> at n.5, the phrase "extensive and persuasive" is a mistaken quotation of the original "extensive and <u>pervasive</u>" standard.  <u>Compare</u> <u>Reliance Steel</u>, 675 F.3d at 589 ("[T]he facts required to assert this 'general' jurisdiction must be 'extensive and persuasive.'") <u>with</u> <u>Compagnie des Bauxites de Guinea</u>, 651 F.2d at 890 (Gibbons, J., dissenting) ("[T]he facts requisite to asserting general jurisdiction cannot be "carefully tailored"; they must be extensive and pervasive.").  In light of the widespread use of the phrase "extensive and persuasive" after <u>Reliance Steel</u> and the fact that the change in nomenclature did not affect the substance of the test for general personal jurisdiction, the Court has refrained from correcting that phrase throughout this ruling.

## II. DISCUSSION

Arguing that the Supreme Court of New Jersey's recent decision in Nicastro contradicts the Court's analysis in its June 7 and August 15, 2005 rulings that it lacks personal jurisdiction over Sypris, Schmidt now moves for reconsideration of those decisions pursuant to Federal Rule of Civil Procedure 60(b).  In doing so, Schmidt relies on Nicastro's holding that:

> [T]he stream-of-commerce theory supports the exercise of jurisdiction if the manufacturer knew or reasonably should have known of the distribution system through which its products were being sold in the forum state.…  Due process permits this State to provide a judicial forum for its citizens who are injured by dangerous and defective products placed in the stream of commerce by a foreign manufacturer that has targeted a geographical market that includes New Jersey.

987 A.2d at 577.

Additionally, Schmidt notes portions of the Nicastro decision which stated that a manufacturer may not escape the jurisdiction of a state in which it knew or should have know that its products were being sold by routing those products through an independent distributor located outside that state.  See Id. at 591.  Rather, "[a] foreign manufacturer will be subject to [New Jersey's] jurisdiction if it knows or reasonably should know that through its distribution scheme its products are being sold in New Jersey."  Id. at 591-92.  If a manufacturer distributes its products through a nationwide network, it will be presumed to know that its products are being sold in New Jersey and will be subject to that state's jurisdiction unless it "take[s] some reasonable step to prevent the distribution of its products in th[at] State."  Id. at 592.

Based on those statements and the fact that Sypris stipulated during the prior proceedings that it was aware that Schmidt distributed its machines throughout the nation, Schmidt argues that the Court erred by ruling that it lacked personal jurisdiction over Sypris.[7]  In assessing that

_____

[7] Schmidt's arguments are addressed solely to the stream of commerce theory, which relates only to specific personal jurisdiction.  The company's pending Motion for Reconsideration does not

contention, the Court must apply the standard of review applicable to motions requesting reconsideration pursuant to Federal Rule of Civil Procedure 60(b).

## A.  Standard of Review

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992).  As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds:  (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling.  See Id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'"  The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

---

challenge the Court's earlier rulings that Sypris's contacts with New Jersey were not sufficiently "systematic and continuous" to give rise to general personal jurisdiction.

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling.  United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations omitted).  Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice" if not addressed.  See Grape, 549 F.3d at 603-04; N. River Ins., 52 F.3d 1218.  Mere "disagreement with the Court's decision" does not suffice.  P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp., 161 F. Supp.2d 349, 353 (D.N.J. 2001).

## B.  The Pending Motion

Schmidt's Motion for Reconsideration must be denied for three distinct and independent reasons.  First, it is untimely.  Federal Rule of Civil Procedure 60(c)(1) requires that a motion for reconsideration be "made within a reasonable time."  What constitutes a "reasonable time" depends on the "circumstances of each case."  Delzona Corp. v. Sacks, 265 F.2d 157, 159 (3d Cir. 1957).  The case on which Schmidt's request relies – Nicastro – was decided on February 2, 2010.  Schmidt could have alerted the Court that it intended to seek reconsideration based on that decision at any subsequent time.  It failed to do so, and did not submit the pending Motion until over six months later, on August 17, 2010.  While such a delay would not necessarily preclude reconsideration under normal circumstances, it was unreasonable in the context of this case.  To say the progress of this litigation – a relatively simple product liability suit – has been "slow" would be a gross understatement.  This case has been ongoing for almost 10 years.  During that time, both Plaintiffs and Schmidt have caused numerous delays by filing myriad motions relating to matters that are ancillary at best to the dispute that forms the heart of the case:  who is liable for Mr. Leja's injuries.  In the six months since Nicastro was decided, Schmidt's representatives

have submitted multiple letters – including a communication dated August 10, 2010 regarding pretrial motions – to the Court and appeared at oral argument involving a request for recusal filed by Plaintiffs.  Never in the course of those letters or appearance did they mention the <u>Nicastro</u> decision or indicate their intent to seek reconsideration of the Court's five-year-old decisions holding that it lacks personal jurisdiction over Sypris.

Allowing reconsideration of those rulings at this point would cause further unnecessary delay.  Until recently, this matter was scheduled for trial beginning on October 12, 2010.  At the request of the parties, the Court has adjourned that trial until February 14, 2011.  Bringing Sypris back into the case would almost certainly necessitate further adjournments.  Moreover, it would result in an inexcusable waste of resources.  Over the past six months, Plaintiffs and Schmidt have submitted multiple drafts of a Pretrial Order.  They participated in a final pretrial conference before Magistrate Judge Michael A. Shipp on August 5th of this year, and previously submitted several motions in limine, which the Court decided on March 31, 2010.  Each of those proceedings would have to be revisited if Sypris were added as a third-party Defendant prior to trial.

More important than the Court's resources are the potential human costs of further delay. The tragic death of Mr. Leja – the individual out of whose injuries this litigation arose and who would have most benefitted from its conclusion – during the long pendency of this case has proven the maxim that "justice delayed is justice denied."   The peace of mind that both parties will derive from the final determination of their legal obligations to one another is long overdue, and the Court will not delay it further by revisiting issues that were decided in 2005 on the basis

of a case that could have been brought to its attention six months before the pending Motion was filed.[8]

Even if Schmidt had filed its request for reconsideration within a reasonable time, the Nicastro decision cannot form a proper basis for granting that relief.  As discussed above, a party seeking reconsideration must demonstrate "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice."  N. River Ins., 52 F.3d at 1218.  Schmidt has not pointed to any new evidence, and has not alleged that refusing its request for reconsideration would result in manifest injustice.  Rather, its pending Motion for Reconsideration appears to be based on the first factor – an intervening change in law.  Schmidt concedes, however, that Nicastro does not purport to "announce a new standard for application of the stream-of-commerce theory, but clarifies existing law."  (Schmidt's Br. Supp. Mot. Recons. 1); see also Nicastro, 987 A.2d at 589 (characterizing ruling as "reaffirm[ing] the reasoning" of an earlier decision).  Thus, by its own admission Schmidt has not asserted a proper basis for reconsideration.[9]

Finally, Schmidt's substantive arguments are inapposite.  When assessing the impact of Nicastro on this Court's earlier decisions, it is necessary as a preliminary matter to examine the interplay between New Jersey state court decisions and our federal precedents interpreting the

---

[8] The Court's refusal to further delay this litigation by revisiting its earlier rulings does not mean that Schmidt may not assert claims for indemnification and/or contribution against Sypris in the event it is found liable at trial.  It simply precludes Schmidt from doing so in this district or as part of this case.  The Court is not aware of any circumstance that would prevent Schmidt from asserting such claims in a forum that would have personal jurisdiction over Sypris, such as the state or federal courts of Kentucky.

[9] As discussed below, the ruling in Nicastro actually does differ in material respects from earlier decisions by the Supreme Court of the United States relating to the stream of commerce theory of specific personal jurisdiction.  To the extent that it does so, however, it did not create an intervening change in law because Nicastro was a state-court interpretation of the United States Constitution, and as such could not have supplanted the rulings of the Supreme Court of the United States with which it conflicts.

"stream of commerce" test.  New Jersey's long-arm statute extends jurisdiction to the extent permissible "consistent with due process of law."  <u>Nicastro</u>, 987 A.2d at 589.  New Jersey courts have interpreted that rule as allowing the exercise of "jurisdiction over a non-resident defendant 'to the uttermost limits permitted by the United States Constitution.'"  <u>Id.</u> (quoting <u>Avdel Corp. v. Mecure</u>, 277 A.2d 207, 209 (N.J. 1971)).  Thus, the question of whether New Jersey's long-arm statute allows this Court to assert personal jurisdiction over Sypris turns on the interpretation of the United States Constitution – an area that is uniquely the province of the federal courts. <u>See, e.g.</u>, <u>Baker v. Carr</u>, 369 U.S. 186, 211 (1968) (The Supreme Court of the United States is "the ultimate interpreter of the [United States] Constitution."); <u>Cooper v. Aaron</u>, 358 U.S. 1, 18 (1958) ("[T]he federal judiciary is supreme in the exposition of the law of the [United States] Constitution.").  To the extent that <u>Nicastro</u> conflicts with our federal precedents relating to the stream of commerce theory by expanding personal jurisdiction beyond the bounds set by the Supreme Court of the United States in its previous decisions, it would violate the due process clause and must be disregarded.  <u>See</u> <u>Cippollone v. Ligget Grp., Inc.</u>, 505 U.S. 504, 516 (1992) ("[S]ince our decision in <u>M'Cullough v. Maryland</u>, 17 U.S. 316, 427 (1819), it has been settled that state law that conflicts with federal law is 'without effect.'").

Schmidt's pending Motion for Reconsideration is based on two statements in <u>Nicastro</u>. In the first, the Supreme Court of New Jersey held that "[a] foreign manufacturer will be subject to [New Jersey's] jurisdiction if it knows or reasonably should know that through its distribution scheme its products are being sold in New Jersey."  <u>Nicastro</u>, 987 A.2d at 591-92.  The second supplemented that holding by opining that, if a manufacturer distributes its products through a nationwide network, it will be presumed to know that they are being sold in New Jersey unless it takes affirmative steps to prevent them from finding their way to that State.  <u>Id.</u> at 592.  Thus, the

cumulative effect of the portions of <u>Nicastro</u> on which Schmidt relies is to impose specific

personal jurisdiction under the stream of commerce theory on any manufacturer who distributes

its products into a nationwide network on the grounds that it is foreseeable that those products

will make their way to New Jersey.

That holding is at odds with the decisions of the Supreme Court of the United States in

<u>World-Wide Volkswagen</u> and <u>Asahi</u>.  The former ruled that, "the foreseeability that is critical to

due process analysis is not the mere likelihood that a product will find its way into the forum

State.  Rather, it is that the defendant's conduct and connection with the forum State are such

that he should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen</u>,

444 U.S. at 297; <u>see also</u> <u>Pennzoil</u>, 149 F.3d at 203 ("[T]he mere foreseeability that a product

one sells may end up in the forum state does not render the seller amenable to suit in the forum

state.") (citation omitted).  Justice Brennan's opinion in <u>Asahi</u> – the less restrictive of the two

plurality decisions in that case – included a similar requirement, stating that the stream of

commerce theory only creates personal jurisdiction over a foreign manufacturer if it "delivers its

products into the stream of commerce <u>with the expectation that they will be purchased by

consumers</u> in the forum State."  <u>Asahi</u>, 480 U.S. at 119-20 (emphasis in original).  In doing so,

Justice Brennan noted the contrast between "the foreseeability of litigation in a State to which a

consumer fortuitously transports a defendant's product (insufficient contacts) [and] the

foreseeability of litigation in a State where the defendant's product was regularly <u>sold</u> (sufficient

contacts)."  <u>Id.</u> at 119 (emphasis in original); <u>see also</u> <u>Nicastro</u>, 987 A.2d at 594 (Hoens, J.,

dissenting) ("[T]he majority has effectively substituted any effort by a manufacturer to sell its

product anywhere in the nation as the only act needed for assertion of our jurisdiction.").

As discussed at length in the Court's prior rulings, this case falls under the "insufficient contacts" category identified by Justice Brennan in <u>Asahi</u> – the fortuitous series of events by which the machine found its way to New Jersey is illustrative of that point.  Sypris, a manufacturer based in Kentucky, sold its products to Schmidt, a company based in Texas.  The top closures sold to Schmidt were specifically designed for that company and were not sold in other states.  <u>See</u> <u>Leja I</u>, 2005 WL 1366553 at *2.  Once received, the enclosure at issue in this litigation was added to a custom-built machine assembled by Schmidt and sold to Sylvan, a machinery distributor headquartered and doing business in New York.  Sylvan, in turn leased the machine to L&L, which is also headquartered in New York.  It was only after the machine proved inadequate to the task for which it was designed and assembled that it was returned to Sylvan and subsequently sold to WVP, Mr. Leja's employer in New Jersey.  In other words, this case deals with a machine component custom-built by Sypris that was not sold to consumers in New Jersey, and found its way to that state only after a fortuitous series of events that included five changes in the company by which it was owned and/or operated.  In light of the fact that Sypris custom-built the type of closure at issue in this case according to Schmidt's specifications and did not sell similar closures to other manufacturers, Sypris cannot be said to have introduced those closures "into the stream of commerce with the expectation that they w[ould] be purchased by consumers" in New Jersey.  <u>See</u> <u>Asahi</u>, 480 U.S. at 119-20 (emphasis in original).  Therefore, the Court reaffirms its earlier rulings that it lacks specific personal jurisdiction over Sypris, and Schmidt's Motion for Reconsideration of those decisions will be denied.

### III.  CONCLUSION

For the reasons set forth above, Schmidt's Motion for Reconsideration is denied.  The

Court will enter an Order implementing this Opinion.

  **s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  October 19, 2010