**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZOFIA LEJA, individually and as general administratix and administratix ad prosequendum of the estate of KAZIMIERZ LEJA, <br><br> Plaintiff, <br><br> v. <br><br> SCHMIDT MANUFACTURING, INC. and SYLVAN EQUIPMENT CORP., <br><br> Defendants. | Civ. No. 01-5042 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

CHASAN, LEYNER & LAMPARELLO, P.C.
by: Anthony v. D'Elia, Esq.
300 Harmon Meadow Boulevard
Secaucus, New Jersey 07094

    *Attorneys for Plaintiff,*

MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.
by: Dawn Courtney Doherty, Esq.
1800 John F. Kennedy Boulevard
Suite 1900
Philadelphia, Pennsylvania 19103

GORDON & REES, LLP
by: Elizabeth F. Lorell, Esq.
Columbia Corporate Center
18 Columbia Turnpike, Suite 220
Florham Park, New Jersey 07932

*Attorneys for Defendants.*

## DEBEVOISE, Senior District Judge

This matter arises out of an industrial accident that occurred on May 4, 2000.  That day, decedent Kazimierz Leja suffered severe injuries ("the accident") when he attempted to open a bulk sandblasting unit ("the machine") manufactured by Defendant Schmidt Manufacturing, Inc. ("Schmidt") while the machine was still pressurized.  Mr. Leja died of an alcohol overdose on March 25, 2008.  Alleging that the machine was defectively designed[1] and that the accident caused his eventual overdose, his widow, Plaintiff Zofia Leja, asserts claims against Schmidt for (1) wrongful death, (2) survivor benefits for damages suffered by Mr. Leja before his death, and (3) loss of consortium.  In support of her design defect allegations, Plaintiff argues that the "camlock closure," the cover at the top of the machine, qualified as a "quick-opening or quick-actuating closure" under the 1995 edition of the American Society of Mechanical Engineers' Code—a list of industry standards on the design and manufacture of machines such as the one at issue in this case.  That edition of the Code required manufacturers of devices that utilized such closures to install a visible or audible warning device in order to warn users not to open the closure while the machine is pressurized.  As such, Plaintiff maintains that Schmidt should have installed a pressure-indicating device at the top of the machine, such as a pressure gauge, that would have indicated to Mr. Leja that the machine was pressurized before he attempted to open it.  Schmidt argues that it was not required install such a device on the machine because the camlock closure was not quick-actuating.

---

[1] While Plaintiff has pursued a cause of action in strict liability premised on a design defect up to this point, as discussed in Point C, due to the nature of the defect alleged in this case, Plaintiff may pursue a theory of liability at trial premised either on a design defect or a warning defect.

As this matter nears trial, the parties seek reconsideration and/or clarification of several prior rulings.  On July 8, 2011, Schmidt filed a Motion for Reconsideration of the Court's April 6, 2011 ruling that (1) the statements in Schmidt's expert report by its Human Factors Expert, Steven Wilcox, regarding Mr. Leja's conduct as the cause of the accident be redacted, and that (2) Mr. Leja is entitled the presumption that he would have heeded a pressure-indicating device had such a device been installed on the machine on the day of the accident.  Schmidt also seeks clarification regarding whether, in pursuing its cross-claim against former Defendant Sylvan Equipment Corporation (Sylvan), it is entitled to the presumption that Mr. Leja would have heeded certain warning labels that were removed from the machine by Sylvan.

That same day, Plaintiff filed a Motion for Reconsideration of the Court's March 31, 2010 ruling allowing Schmidt to argue at trial that Sylvan's removal of warning labels from the machine was the sole proximate cause of the accident.  Plaintiff also seeks clarification regarding whether the jury will be allowed to apportion liability for the accident between Schmidt and Sylvan at trial.

For the reasons set forth below, both motions will be granted in part and denied in part. Schmidt may introduce evidence of Mr. Leja's conduct at trial to show that (1) it was unforeseeable and therefore that the machine was not defective, and (2) it was the proximate cause of the accident.  However, to the extent the jury finds (1) an instance of Mr. Leja's conduct to have been a foreseeable misuse of the machine, and (2) that the machine is defective based on Schmidt's failure to adequately prevent that foreseeable misuse, it may not consider whether that instance proximately caused the accident.  Accordingly, the statements in Schmidt's expert report by its Human Factors Expert, Steven Wilcox, regarding Mr. Leja's conduct as the cause of the accident need not be redacted.  However, the jury may not consider those statements to the

extent that they are based on one or more instances of conduct that the jury finds (1) to have been

a foreseeable misuse of the machine, and (2) that the machine is defective based on Schmidt's

failure to adequately prevent that foreseeable misuse.

Plaintiff is entitled to the presumption that Mr. Leja would have heeded a pressure-

indicating device, notwithstanding whether Plaintiff's pursues a theory of liability at trial based

on a design defect or a warning defect.   Similarly in pursuing its cross-claim against Sylvan,

Schmidt is entitled to the presumption that Mr. Leja would have heeded the warning labels that

Schmidt removed from the machine.

Finally, under the doctrine of concurrent causation, the jury may not apportion liability at

trial between Schmidt and Sylvan.  However, the jury may relieve Schmidt of liability entirely

by finding that Sylvan's removal of warning labels from the machine was the sole proximate

cause of the accident.

## I.  BACKGROUND

The facts underlying this action are set forth in the Court's March 31, 2008 and March

31, 2010 rulings, See Leja v. Schmidt Manuf., Inc., 2008 WL 906252 (D.N.J. 2008) and Leja v.

Schmidt Manuf., Inc., 2010 WL 1372226 (D.N.J. 2010), respectively.  Thus, for the sake of

brevity, the Court will incorporate by reference the "background" section of those rulings and

will refrain from revisiting the majority of the information set forth therein.  However, the Court

will summarize relevant portions of those rulings, as well portions of its April 6, 2011 ruling,

that inform today's ruling.

In its March 31, 2010 ruling, the Court considered, among other things, a Motion for

Summary Judgment submitted by Sylvan against Schmidt's claims against it for contribution and

indemnification.  In its motion, Sylvan argued that the evidence in the record, particularly the

expert deposition testimony, "overwhelmingly suggests that the missing warning labels did not proximately cause the accident." Leja, 2008 WL 906252, at *2. In denying Sylvan's motion, the Court noted that "while the experts' opinions cast doubt on the causation issue, they are not conclusive." Id. at *4. In addition, the Court found "evidence to the contrary." Id. at *3. As a result, the Court held that "a jury could reasonably infer that the absence of the warning labels was a proximate cause of Leja's injuries." Id. at *4.

In its March 31, 2010 ruling, the Court considered two Motions for Summary Judgment submitted by Schmidt and two Motions in Limine—one submitted by Plaintiff and one by Schmidt. In its second Motion for Summary Judgment, Schmidt argued that Plaintiff's claim that the machine was defectively designed should be dismissed because she failed to submit evidence of a reasonable alternative design. The Court dismissed Plaintiff's design claim to the extent that it was based on Schmidt's failure to install a "pop-up valve"—a device that would have prevented Mr. Leja from opening the machine while it was still pressurized—but allowed the claim to move forward to the extent that it was based on Schmidt's failure to include a visible gauge or other pressure-indicating device near the camlock closure that would have indicated to Mr. Leja that the machine was pressurized before he attempted to open it. In doing so, the Court found that Plaintiff failed to provide meaningful expert testimony regarding the feasibility of an alternative design that included a "pop-up valve." In addition, the Court rejected Schmidt's argument that the failure to include a pressure-indicating device only gives rise to a claim premised on a warning defect, and not one premised on a design defect. Specifically, the Court found that "[t]he categorization of Plaintiff's claim is unimportant—her cause of action arises under the same statute, requires the same standard of proof, and will result in the same damages regardless of whether she argues at trial that the machine was defectively designed because it did

not include a visible and/or audible warning device near the top of the pressure vessel or that Schmidt failed to properly warn users of the danger of opening the machine while pressurized by failing to include such a device." Leija, 2010 WL 1372226, at *9. As a result, the Court permitted Plaintiff to "argue under either theory at trial." Id.

In her Motion in Limine, Plaintiff argued, among other things, that Schmidt should not be allowed to introduce evidence of Mr. Leja's comparative negligence in operating the machine. The Court ruled that the Schmidt may not introduce evidence of Mr. Leja's conduct at trial to establish comparative negligence, but that such evidence could be introduced to show that his conduct was the sole proximate cause of the accident. In doing so, the Court rejected Plaintiff's argument that Mr. Leja's conduct is inadmissible under the New Jersey Supreme Court's decision in Jurado v. Western Gear Works, 131 N.J. 375 (1993), which carved out an exception to the traditional proximate cause inquiry in cases where a product is found defective solely because the manufacturer failed to include a safety device that would have prevented the plaintiff's injuries. See 131 N.J. at 388.

The Court noted that there were "at least two factual questions that must be answered by the jury before the Jurado exception would apply: (1) whether Schmidt's failure to include a warning gauge constituted a design defect, and (2) whether Mr. Leja would have noticed and heeded such a gauge." Leija, 2010 WL 1372226, at *12. These factual questions precluded a ruling that would prevent Schmidt from introducing evidence of Mr. Leja's negligent conduct at trial. As to the second factual question, the Court found that Plaintiff was entitled to a rebuttable presumption under New Jersey state law that Mr. Leja would have heeded a pressure-indicating device had such a device been installed by Schmidt ("the heeding presumption").

On April 6, 2011, the Court held a pre-trial hearing where it (1) ruled, among other things, that the statements in Schmidt's expert report by its Human Factors Expert, Steven Wilcox, regarding Mr. Leja's conduct as the cause of the accident must be redacted and cannot be used at trial, and (2) reaffirmed that Plaintiff is entitled to the heeding presumption.

## II.  DISCUSSION

Schmidt now moves for reconsideration of the two aforementioned April 6, 2011 rulings pursuant to Local Civil Rule 7.1(i).  In doing so, it argues that (1) redacting Mr. Wilcox's statements regarding Mr. Leja's negligent conduct as the cause of the accident would be inconsistent with the Court's March 31, 2010 ruling allowing Schmidt to introduce such conduct as the sole proximate cause of the accident, and (2) Plaintiff is not entitled to the heeding presumption because that presumption only applies to claims premised on a warning defect, while Plaintiff's claim is premised on a design defect.  Schmidt also seeks clarification regarding whether it is entitled to the heeding presumption with respect to its cross-claim against Sylvan. In doing so, it argues that the heeding presumption should apply to that claim because it is premised on a warning defect.

Plaintiff moves for reconsideration of the Court's March 31, 2010 ruling allowing Schmidt to argue at trial that Sylvan's removal of warning labels from the machine was the sole proximate cause of the accident.  In doing so, Plaintiff contends that such an argument lacks support in the record.  Plaintiff also seeks clarification regarding whether the jury will be allowed to apportion liability for the accident between Schmidt and Sylvan at trial.  In doing so, Plaintiff argues that Schmidt may only be relieved of liability if the jury finds Schmidt's removal of the warning labels from the machine to be the sole proximate cause of the accident.

**A.      Standard of Review**

"[I]t is well-established in this district that a motion for reconsideration is an extremely limited procedural vehicle." Resorts Int'l v. Greate Bay Hotel & Casino, 830 F. Supp. 826, 831 (D.N.J. 1992). As such, a party seeking reconsideration must satisfy a high burden, and must "rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

Since the evidence relied upon in seeking reconsideration must be "newly discovered," a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling. See id. Local Civil Rule 7.1(i), which governs such motions, provides that they shall be confined to "matter[s] or controlling decisions which the party believes the Judge or Magistrate Judge has 'overlooked.'" The word "overlooked" is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, "[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Resorts Int'l, 830 F. Supp. at 831; see also Egloff v. N.J. Air Nat'l Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988); Pelham v. United States, 661 F. Supp. 1063, 1065 (D.N.J. 1987).

A decision suffers from "clear error" only if the record cannot support the findings that led to that ruling. United States v. Grape, 549 F.3d 591, 603-04 (3d Cir. 2008) (citations omitted). Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling; it must demonstrate that (1) the holdings on which it bases its request were without support in the record, or (2) would result in "manifest injustice"

if not addressed.  See Grape, 549 F.3d at 603-04; N. River Ins., 52 F.3d 1218.  Mere

"disagreement with the Court's decision" will not suffice.  P. Schoenfeld Asset Mgmt., LLC v.

Cendant Corp., 161 F. Supp.2d 349, 353 (D.N.J. 2001).

**B.**     **Admissibility of Mr. Leja's Negligent Conduct**

Schmidt argues that under New Jersey products liability law, "a plaintiff's conduct may

be relevant to the question of proximate cause in that the jury may find that plaintiff's conduct

had been the sole cause of the accident."  (Def.'s Br., 6.)  (quotations and citations omitted).

Schmidt therefore intends to introduce evidence of Mr. Leja's conduct leading up to the accident

in order to show that it (1) was not reasonably foreseeable and (2) was the proximate cause of the

accident.  Specifically, in its brief, Schmidt notes the following six instances of Mr Leja's

conduct:

1.  Mr. Leja did not open the blow down valve on the Schmidt vessel before he attempted to open the top closure;

2.  Mr. Leja did not check the blow down valve to determine if the vessel was under pressure;

3.  Mr. Leja did not release all the cam-locks prior to opening the t-bolts;

4.  Mr. Leja proceeded to force open the t-bolts in the face of physical resistance due to the machine being under pressure;

5.  Contrary to previous training, Mr. Leja used tools to strike down on the cam-locks and t-bolts in order to open them.

6.  Mr. Leja ignored the metal warning plates on the vessel which warned users to depressurize the vessel before opening the top closure.

(Def.'s Br., 4.)

Plaintiff concedes that instances 1, 2, and 6 are relevant to whether Mr. Leja's use of the

machine was foreseeable, but maintains that they cannot be used to show that his conduct was

the proximate cause of the accident.  Specifically, Plaintiff contends that if the jury finds those

instances to be foreseeable misuse of the machine, the machine is deemed defective, and, under Jurado, the issue of proximate cause is automatically determined in Plaintiff's favor, so long as the jury finds that Mr. Leja would have heeded a pressure-indicating warning device.  On the other hand, according to Plaintiff, if the jury finds those instances to be unforeseeable misuse— i.e. the machine is not found defective—or if the jury does not find that Mr. Leja would have heeded a pressure-indicating warning device, "proximate cause will be determined in the Defendant's favor."  (Pl.'s Reply Br., 5.)  Plaintiff further contends that instances 3, 4, and 5 are not relevant to whether Mr. Leja's use of the machine was foreseeable or to proximate cause because they occurred "after Mr. Leja climbed to the top of the ladder, and after he would have heeded a warning gauge if one had been provided."  (Pl.'s Reply Br., 6.)  However, she concedes that they "might be relevant to the question of whether [Mr. Leja] would have heeded a warning gauge if one had been present."  (Id.)

The parties' contentions regarding the application of the Jurado exception to the facts of this case indicate that the Court, in its rulings of March 31, 2010 and April 6, 2011, failed to adequately address (1) the circumstances under which proximate cause will be predetermined in Plaintiff's favor; and (2) the extent to which Mr. Leja's conduct may be introduced as the proximate cause of the accident.  As such, they provide a basis for reconsideration of those rulings.

Jurado held that "[p]roduct misuse theoretically could relate to the existence of a defect [or] the issue of causation. . . ." 131 N.J. at 387.  Misuse may indicate a defect because "[a] manufacturer [] has a duty to prevent an injury caused by the foreseeable misuse of its product." Id. at 388.  In other words, a product is defective when a manufacturer breaches that duty by failing to design its product in a way that would prevent foreseeable misuse.

Here, there are multiple, distinct instances of conduct at issue, some of which may be found to be foreseeable misuse, while others may be found to be unforeseeable misuse, or found not to be misuse at all.  Those instances of foreseeable misuse may provide the basis of the product defect while those of unforeseeable misuse may not because "a manufacturer is not under a duty to protect against unforeseeable misuses" of its product.  Id. at 388.  Thus, Plaintiff's contention that evidence of instances 3, 4, and 5 cannot be introduced to show that Mr. Leja's conduct was unforeseeable is unavailing because a jury may find that Schmidt had a duty to install a pressure-indicating device to prevent certain instances of Mr. Leja's conduct but not others.  Put another way, Schmidt must be allowed to introduce evidence of instances 3, 4, and 5 to show that it had no duty to prevent them.

Misuse may relate to the issue of causation where a manufacturer introduces evidence of a plaintiff's misuse of its product to negate the inference that an established defect was a proximate cause of the plaintiff's injury.  Under New Jersey law, "[e]ven if a defect is a contributing or concurring cause, but not the sole proximate cause, of an accident, the manufacturer will be liable."  Id.  As a result, the jury will have to decide whether the plaintiff's misuse of its product, was the sole proximate cause of his or her injury.  See id. ("If the jury concludes that the product is defective, it must then determine whether the misuse proximately caused the injury.").

The crux of Jurado centers around the logical inconsistency in allowing a manufacturer to introduce evidence of a plaintiff's misuse as the sole proximate cause of his injury where the product at issue is found defective based on the manufacturer's failure to design it in a manner that would prevent against that foreseeable misuse.  The court states that "[p]roximate cause could not, in such a case, present an obstacle on the grounds of misuse.  To do so would negate

11

the very reason for declaring the design defective in the first instance." Id. at 388 (citation omitted). As a result, "[i]n cases in which a product is defective solely because of a foreseeable misuse, the determination of defect predetermines the issue of proximate cause." Id. at 389.

Predetermining proximate cause where a defect is premised on foreseeable misuse makes sense on Jurado's facts. Jurado was a case where the plaintiff injured his right hand when it became caught in the "in-running nip point" of a collating machine that he was attempting to clean. Id. at 379. The plaintiff sued the manufacturer of the machine under a design defect theory of liability, arguing that the machine lacked a safety guard that would have prevented his hand from getting caught in the in-running nip point. Id. at 380. At trial, the manufacturer introduced evidence that the plaintiff had misused the machine by attempting to clean it while it was operational. See id. at 381. According to the manufacturer, "the machine was designed to be cleaned while in 'static condition.'" Id. Thus, the plaintiff's defect claim turned on whether an act of misuse—the failure to turn off the collating machine before attempting to clean it—was foreseeable. As such, to consider whether the plaintiff's failure to turn off the collating machine was the proximate cause of his injury would effectively eviscerate the manufacturer's duty to protect against that misuse.

Implicit in the Jurado court's reasoning as to how a finding that the collating machine was defective predetermines the issue of proximate cause is that the "addition of a safety guard would [have] indisputably prevent[ed] the foreseeable misuse that cause[d] [the] plaintiff's injuries." Truchan v. Nissan Motor Corp., 316 N.J. Super. 554, 567 (App. Div. 1998). In other words, it was undisputed that the safety guard would have prevented access to the in-running nip point. Thus, in cases where the jury "determines that a design defect exists [solely] because the manufacturer has filed to include [] safety devices," to prevent foreseeable misuse, and there is

no dispute whether the safety devices would have prevented such misuse, "there is no proximate cause question of any moment left to consider." Jurado, 131 N.J. at 388.

This, however, is not such a case.  Indeed, the parties hotly dispute whether the addition of a pressure-indicating device would have prevented Mr. Leja's misuse of the machine that caused his injuries.  As discussed in Point C, whether the addition of such a device would have prevented Mr. Leja's misuse depends on whether he would have heeded it.  As a result, the finding that the machine was defective due to Schmidt's failure to include a pressure-indicating device cannot automatically predetermine whether that failure was a proximate cause of Mr. Leja's injuries because it does not speak to whether Mr. Leja would have heeded such a device.

To be sure, as discussed in Point C, Plaintiff is entitled to the presumption that he would have heeded a pressure-indicating device had one been installed on the machine.  Schmidt, however, may rebut this presumption by introducing evidence of Mr. Leja's conduct concerning (1) his knowledge of the risk that the pressure-indicating device was supposed to address, or (2) a general indifference to safety warnings.  See Coffman v. Keene Corp., 133 N.J. 581, 603-04 (1993) ("[A] plaintiff's knowledge of a certain risk, irrespective of the existence of a warning, may directly affect the issue of causation."); Theer v. Philip Carey Co., 133 N.J. 610, 621 (1993) ("[W]hether decedent had been generally indifferent to matters of personal health or specifically to warnings of particular health hazards" bears on causation).  Thus, if the jury finds the machine defective solely because it did not include a pressure-indicating device, but that Mr. Leja's conduct indicates that (1) he would have attempted to open the machine's top closure despite knowledge that the machine was under pressure, or (2) a general indifference to warning devices, the heeding presumption will have been rebutted and proximate cause determined in Schmidt's

favor.[2]  In other words, under that scenario, Mr. Leja's conduct, not the absence of a pressure-indicating device, will be found the proximate cause of his injuries.

While Jurado cannot predetermine the issue of proximate cause in this case, it nonetheless determines the extent to which Mr. Leja's conduct may be introduced to show that he would not have heeded a pressure-indicating device.  As previously discussed, in Jurado, had the jury found the collating machine defective due to the manufacturer's failure to install a safety guard to prevent against the foreseeable misuse of attempting to clean that machine while it was still operational, the manufacturer could not then introduce that misuse as the sole proximate cause of the employee's injury because "[t]o do so would negate the very reason for declaring the design defective in the first instance."  Jurado, 131 N.J. at 388 (citation omitted).  Similarly, in this case, if the jury finds the machine defective due to Schmidt's failure to include a pressure-indicating device to prevent the foreseeable misuse of attempting to open the machine's top closure while under pressure, it would be illogical to allow Schmidt to rebut the presumption that Mr. Leja would have heeded such a device with evidence of that misuse.

However, as previously discussed, there is evidence of multiple, distinct instances of conduct, and only those instances of foreseeable misuse may provide the basis of a product defect claim.  It follows, then, that, to the extent the jury finds the machine defective due to Schmidt's failure to install a pressure-indicating device to prevent an instance of foreseeable misuse, it may not consider that instance in determining proximate cause—i.e. whether Mr. Leja's conduct indicates that he would not have heeded a pressure-indicating device.  On the other hand, to the extent the jury finds an instance of misuse to be unforeseeable, it may consider

---

[2] To be sure, to rebut the heeding presumption, Schmidt need not be relegated to evidence of Mr. Leja's conduct on the day of the accident.  Evidence that a plaintiff would not have heeded a given warning device "would encompass a plaintiff's experience, conduct, attitudes, and knowledge of the hazards of the product."  Theer, 133 N.J. at 621.

whether that instance indicates that Mr. Leja would not have heeded a pressure-indicating device.

As a result, Schmidt is entitled to introduce evidence of the six aforementioned instances of Mr. Leja's conduct to show that they (1) constitute misuse of the machine, (2) were unforeseeable—i.e. cannot provide the basis of Plaintiff's defect claim, and (3) were the proximate cause of the accident and/or indicate that Mr. Leja would not have heeded a pressure-indicating device.  However, if the jury finds the machine defective based on Schmidt's failure to install a pressure-indicating device to prevent a particular instance of foreseeable misuse of the machine, it may not consider that instance in determining proximate cause.

**C.     The Heeding Presumption with Respect to Plaintiff's Claim against Schmidt**

The New Jersey Products Liability Act provides the following three ways in which a plaintiff may assert a product defect claim.  See N.J.S.A. 2A:58C-2.  Specifically, a plaintiff may assert an (a) manufacturing defect; (b) warning defect; or (c) design defect.  See id.; Zaza v. Marquess and Nell, Inc., 144 N.J. 34, 48 (1996) ("Defects are classified as design defects, manufacturing defects or inadequate warning defects.").

Schmidt contends that the defect alleged in this case—the failure to install a pressure-indicating device on the machine—should be characterized as a design defect.  On that basis, Schmidt argues that Plaintiff is not entitled to the presumption that had Schmidt installed a pressure-indicating device, Mr. Leja would have heeded it, because the heeding presumption applies only to claims premised on a warning defect.  Plaintiff counters that there is no need to "pigeonhole" his claim because "the elements for proving a product defect are essentially the same for both a design defect and a failure to warn."  (Pl.'s Br. 9, 11) (emphasis and citation omitted).  Plaintiff further argues that because she bears the burden of proving that Mr. Leja

would have heeded a warning device in order to establish proximate cause under either a design or warning defect theory of liability, she should be entitled to the heeding presumption.

Plaintiff's arguments are well taken.  "To establish a cause of action in strict liability for a defective product, a plaintiff must prove that the defect existed when the product left the defendant's control and that the defect caused injury to a reasonably foreseeable user."  Coffman, 133 N.J. at 593 (citation omitted).  A design defect is one that renders a product not reasonably suitable, fit, or safe for its intended purpose or a danger inherent in a product that has been manufactured as intended when that danger, as a public policy matter, is greater than can be justified by the product's utility.  N.J.S.A. 2A:58C-2; see also Cepeda v. Cumberland Eng'g Co., Inc., 76 N.J. 152, 173 (1978), overruled on other grounds by Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 177, (1979).  Similarly, a warning defect "is based on the notion that absent a warning or adequate warning a product is defective, in that it is not reasonably fit, suitable or safe for intended purposes."  Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242 (1981); see also Coffman, 133 N.J. at 598 ("[T]he question of whether a product was defectively designed is inseparable from the question of whether adequate [warnings] are provided to insure safe usage.") (quotation and citation omitted).  Whether a plaintiff asserts a design defect or a warning defect, the elements to establish a cause of action for strict liability remain the same. See Coffman, 133 N.J. at 594.

Schmidt's argument that Plaintiff's claim "sounds in design defect theory" because she alleges that the machine "lacked an essential safety device" is unpersuasive.  (Def.'s Br., 10.) While the pressure-indicating device at issue in this case is integral to the design of the machine, it also provides a visible warning to the user that the machine is under pressure.  As such, it is not a traditional safety device such as a guard or shutdown mechanism.  Thus, as the Court observed

in its March 31, 2010 ruling, there is no reason to categorize the defect alleged in this case as a design defect or a warning defect.  Plaintiff may pursue alternative theories of liability at trial.

Schmidt's argument that the heeding presumption cannot apply to a claim premised on a design defect because a design defect is "fundamentally different" from a warning defect also rings hollow.  (Def.'s Br., 10-11.)  While a theory of liability based on a design defect may, in certain cases, differ from one based on a warning defect, the heeding presumption has little to do with the theory of liability under which a plaintiff asserts a product defect claim, but instead relates to the issue of proximate case.

In a warning defect case, a plaintiff must demonstrate that "the absence of a warning was a proximate cause of his harm."  <u>Coffman</u>, 133 N.J. at 594.  To do so, the plaintiff must logically show that he would have heeded a given warning had it been put in place by the manufacturer.  <u>See</u> <u>id.</u> at 600.  In other words, if the plaintiff had heeded a warning, he would not have used the product at issue in a manner that would have caused his injury.  Courts have recognized, however, that this is a tall order.   "[A] jury determination of whether, if a warning had been provided, it would have been followed would most likely be highly speculative."  <u>Id.</u>  Indeed, "[a] jury, in effect, would be invited to imagine whether a plaintiff, given the various facets of his or her personality and employment situation, would have heeded a warning."  <u>Id.</u>

As a result, a plaintiff is provided with the legal presumption that he would have heeded a warning had one been provided so that "determinations of causation [] are not based on extraneous, speculative considerations and unreliable or self-serving evidence."  <u>Id.</u> at 601.  As discussed in Point B, a defendant may rebut this presumption by "produc[ing] evidence that such a warning would not have been heeded."  <u>Id.</u> at 603.

Here, notwithstanding whether Plaintiff asserts that the absence of a pressure-indicating device is a design defect or a warning defect, she retains the burden of proving that the absence of such a device was a proximate cause of Mr. Leja's injuries.  Thus, the logic of the heeding presumption applies to Plaintiff's claim notwithstanding whether the alleged defect is characterized as a warning defect or a design defect.  Moreover, the heeding presumption is particularly applicable to this case because Mr. Leja is now deceased and therefore unable to testify as to whether he would have heeded a pressure warning device.  See Theer, 133 N.J. at 619 ("A heeding presumption is especially significant in a case . . . in which the injured party is deceased.  Because a deceased plaintiff cannot take the stand to testify about his or her would-be reactions to a warning, a jury's deliberations on whether the decedent would have heeded a warning becomes highly conjectural.").  Accordingly, Plaintiff is entitled to the presumption that Mr. Leja would have heeded a pressure-indicating device had one been installed on the machine. However, subject to the restrictions discussed in Point B, Schmidt may rebut this presumption with evidence of Mr. Leja's conduct indicating that he would not have heeded such a device.

**D.      The Heeding Presumption with Respect to Schmidt's Cross-Claim against Sylvan**

Schmidt argues that it is entitled to the heeding presumption with respect to its cross-claim against Sylvan based on Sylvan's removal of warning labels that were originally on the machine when it left Schmidt.  Plaintiff argues that "it would be illogical and inconsistent to afford Schmidt a presumption that Mr. Leja would have heeded the warning labels when all the expert testimony in this case (including Defendant's own experts) is to the contrary."  (Pl.'s Br., 24.)

Plaintiff's argument is unavailing.  As previously discussed, the heeding presumption serves to (1) "ease an injured plaintiff's burden of proof" and (2) "eliminate conjecture about

whether a given plaintiff would have heeded a hypothetical warning." Theer, 133 N.J. at 618-19. While the evidence in the record indicating that Mr. Leja would not have heeded a warning may be used to rebut the heeding presumption, such evidence has no bearing on whether the heeding presumption should apply in the first place to ease the plaintiff's burden of proof and eliminate conjecture. Accordingly, Schmidt is entitled to the heeding presumption in pursuing its cross-claim against Sylvan.

**E.     Apportionment of Liability Between Schmidt and Sylvan**

Schmidt contends that Plaintiff "must bear the risk that the jury will apportion liability to Sylvan at trial thus reducing Plaintiff's recovery." (Def.'s Br., 11.) Schmidt presents no authority to support its argument that a jury may apportion liability among two or more tortfeasors in a strict liability case. Plaintiff, however, correctly argues that there can be no apportionment of liability to Sylvan at trial because Schmidt will, as a matter of law, remain liable for Plaintiff's injuries even if the jury finds Sylvan's removal of the warning labels to be a proximate cause of the accident. New Jersey products liability law recognizes the doctrine of concurrent causation where "more than one act contributes to the accidental harm." Brown v. U.S. Stove Co., 98 N.J. 155, 171 (1984). Under that doctrine, "if the original [product] defect, although not the sole cause of the accident, constituted a contributing or concurrent proximate cause in conjunction with [a] subsequent alteration, the defendant manufacturer will remain liable." Id. Indeed, "[e]ven a significant alteration of a manufactured product will not relieve the manufacturer of liability unless the change itself creates the defect that constitutes the proximate cause of the injury." Id. (citation omitted). Accordingly, in this case, Schmidt will remain liable for Mr. Leja's injuries even if the jury finds that Sylvan's removal of warning

19

labels, in part, caused those injuries.[3]  The jury may not apportion liability for Mr. Leja's injuries at trial among Schmidt and Sylvan.

**F.  Sylvan's Removal of Warning Labels as the Sole Proximate Cause of Mr. Leja's Injuries**

In contrast to the aforementioned issues that required clarification, this one does not. Plaintiff contends that Schmidt should not be allowed to argue that Sylvan's removal of warning labels was the sole proximate cause of Mr. Leja's injuries because that argument lacks support in the record.  This contention is highly repetitive of that set forth by Sylvan in its 2008 Motion for Summary Judgment seeking dismissal of Schmidt's cross-claim against it, as well as that set forth by Plaintiff in its 2010 Motion for Summary Judgment.  Indeed, Plaintiff's contention was squarely addressed and rejected by the Court in its March 31, 2008 and March 31, 2011 rulings, see Leja, 2008 WL 906252, at *3, 4 and Leja, 2010 WL 1372226, at *11, respectively.

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the [C]ourt before rendering its original decision fails to carry the moving party's burden."  Tischio v. Bontex Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998); see also NL Indus., Inc. v. Comm. Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions . . . may not be used to relitigate old matters . . .").  Plaintiff's attempt to relitigate an issue addressed by the Court on two separate occasions is not a basis for seeking reconsideration.  Accordingly, Schmidt may argue at trial that Sylvan's removal of the machine's warning labels was the sole proximate cause of the accident.

---

[3] This, of course, presumes that the jury finds the absence of a pressure-indicating device to be a proximate cause of Mr. Leja's injuries.

## III.  CONCLUSION

For the foregoing reasons, Schmidt's Motion for Reconsideration is GRANTED in part and DENIED in part, while Plaintiff's Motion for Reconsideration is GRANTED in part and DENIED in part.  The Court rules as follows:

(1) Schmidt may introduce evidence of Mr. Leja's conduct at trial to show that (1) it was unforeseeable and therefore that the machine was not defective, and (2) it was the proximate cause of the accident.  However, to the extent the jury finds (1) an instance of Mr. Leja's conduct to have been a foreseeable misuse of the machine, and (2) that the machine is defective based on Schmidt's failure to adequately prevent that foreseeable misuse, it may not consider whether that instance proximately caused the accident.

(2) The statements in Schmidt's expert report by its Human Factors Expert, Steven Wilcox, regarding Mr. Leja's conduct as the cause of the accident need not be redacted.  However, the jury may not consider those statements to the extent that they are based on one or more instances of conduct that the jury finds (1) to have been a foreseeable misuse of the machine, and (2) that the machine is defective based on Schmidt's failure to adequately prevent that foreseeable misuse.

(3) Plaintiff is entitled to the presumption that Mr. Leja would have heeded a pressure-indicating device, notwithstanding whether Plaintiff's claim is premised on a design defect or a warning defect.

(4) With respect to its cross-claim against Sylvan, Schmidt is entitled to the presumption that Mr. Leja would have heeded the warning labels that Sylvan removed from the machine.

(5) The jury may not apportion liability between Schmidt and Sylvan.  However, the jury may relieve Schmidt of liability entirely by finding that Sylvan's removal of warning labels from the machine was the sole proximate cause of the accident.

The Court will enter an order implementing this opinion.


  _/s/Dickinson R. Debevoise_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: August 22, 2011